*This opinion is subject to revision before final publication in the Pacific Reporter*

**2014 UT 29**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

BRADLEY FULLER,
*Defendant and Appellant.*

No. 20110512
Filed July 11, 2014

Fourth District, Provo Dep't
The Honorable Fred D. Howard
No. 091402347

Attorneys:

Sean D. Reyes, Att'y Gen., Jeffrey S. Gray, Asst. Att'y Gen.,
Salt Lake City, for appellee

Randall K. Spencer, Stephanie L. O'Brien, Provo, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court,
in which ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 After police discovered child pornography on Defendant Bradley Fuller's computer, he was charged with ten counts of sexual exploitation of a minor, all second-degree felonies. Pursuant to a plea agreement, Mr. Fuller pled guilty to five counts of voyeurism but reserved the right to appeal the trial court's order denying his Motion to Suppress. On appeal, he challenges the warrant under the Fourth Amendment to the United States Constitution—arguing that it was not sufficiently particular and that it lacked probable cause. He also seeks to suppress statements he made while officers questioned him, claiming that the

questioning violated his Fifth Amendment right against self-incrimination. Finally, he argues that he is entitled to greater protection under the Utah Constitution than under the United States Constitution.

¶2    We conclude that the warrant was supported by probable cause and was sufficiently particular. As to probable cause, Mr. Fuller properly raised a staleness argument in his Motion to Suppress, but he raises his additional argument—that under *Franks v. Delaware* the affiant misled the magistrate into issuing the warrant by omitting critical information—for the first time on appeal. We thus reject his *Franks* claim and also conclude that the information in the warrant was not stale, since a mere two months had passed since the initial search and the warrant application. And the warrant that was issued was not overly broad, given that the warrant application established a wide scope of probable cause, supported by multiple pieces of evidence, including the discovery of an advertisement for a child pornography convention.

¶3    We also conclude that Mr. Fuller was not in custody, so the officers' failure to read him his *Miranda* rights did not violate his Fifth Amendment right against self-incrimination. Finally, we decline to review Mr. Fuller's state constitutional claim because it was not adequately briefed.

## Background

¶4    On September 29, 2008, Special Officer Amanda Jatkowski conducted a child pornography investigation over the Internet using a peer-to-peer (P2P) file-sharing program known as LimeWire. LimeWire uses a file-sharing protocol known as Gnutella, which allows users to connect directly to each other's computers to download files rather than through a central file server.[1] This connection is established through a user's Internet Protocol (IP) address, which is a set of four numbers separated by decimal points, such as 155.97.137.55. This IP address is assigned by the internet service provider (ISP) to either a router or a particular computer, depending on whether a router or computer is connected to the modem. The IP address can either be static

---

[1]    *Encyclopedia: "Gnutella,"* PCMAG.COM, http://www.pcmag.com/encyclopedia/term/43835/gnutella (lasted visited Nov. 22, 2013).

(meaning that it remains the same) or dynamic (meaning that it can change between sessions of internet usage).

¶5 Using LimeWire, Officer Jatkowski searched for the string of terms "kids teen women," which are each known to be associated with child pornography. The search uncovered that someone using the IP address 67.186.233.246 was sharing numerous files with pornographic file descriptions. After reviewing several files shared by this user, Officer Jatkowski confirmed that they contained child pornography, including several videos, pictures, and an advertisement for a child pornography convention.

¶6 Using the IP address associated with the child pornography, Officer Jatkowski referenced the American Registry for Internet Numbers website to confirm that the IP address was assigned by Comcast Cable Communications. A week later, she served an administrative subpoena on Comcast, seeking account information associated with the user's IP address. Comcast revealed that the IP address had been dynamically assigned, but that on the date of Officer Jatkowski's search, the address had been assigned to Robert Fuller, the account holder, whose service address was 224 Woodland Drive in Orem, Utah.

¶7 In November 2008, Special Agent Sonja Nordstrom learned through an informant that a number of individuals lived at the home. This included Robert Fuller, the Comcast account holder, who is also the Defendant Bradley Fuller's older brother. Erin Branch, a male cousin, also lived in the home. Concerning to Agent Nordstrom was the fact that both Erin Branch and Robert Fuller had child sexual abuse charges brought against them. There were pending charges against Robert Fuller for sodomy on a child and aggravated sexual abuse of a child. Branch was a registered sex offender who had been convicted of sexual abuse of a child in 2000.

¶8 Because of the search results and the individuals likely involved, Agent Nordstrom applied for a federal search warrant on December 2, 2008. The application for the warrant requested permission to search the entire premises, which was described in "Attachment A," and it also asked permission to seize multiple items therein as described in "Attachment B," including computer hardware, software, documentation, and other electronic devices or records that may be used to store or access child pornography. The accompanying affidavit also discussed the details of the investigation and common habits of users and distributors of child pornography. The magistrate issued the warrant the same day,

adopting attachments A and B verbatim into the warrant that was issued.

¶9     Three days later, officers from the FBI, the Utah County Sheriff's Office, and the Orem City Police Department executed the warrant. Two related families were living at the home, and the officers secured a total of eight occupants in their sweep of the home, including the Defendant, Mr. Fuller. When the officers entered the basement room where Mr. Fuller and two other men were sleeping in separate beds, Mr. Fuller sat up and tried to manipulate the computer that was at the foot of his bed. An officer instructed Mr. Fuller not to touch the computer, then grabbed Mr. Fuller's arm and escorted him outside.

¶10    Robert Fuller, the Defendant's brother, was interviewed at the scene. He disclosed that he uses a router in his home and that he established separate static IP addresses for each of the computers in the home that connect to that router. He admitted to downloading pornography but expressly denied accessing or storing child pornography. He also told officers that he did not use LimeWire but that his brother, the Defendant, did, and that he had counseled his brother months ago not to access child pornography.

¶11    Mr. Fuller was also interviewed at the scene. When he learned that the officers were searching for child pornography, he admitted that "inappropriate" material would be found on his computer. An officer asked Mr. Fuller if he was willing to speak with him in his car, and Mr. Fuller agreed. The officer specifically told Mr. Fuller that he was not under arrest, that he could leave at any time, and that he did not have to speak with him or answer his questions. Mr. Fuller agreed to speak with the officer. They spoke in the officer's car, with the doors unlocked. He admitted to using LimeWire and to downloading pornography, including "small kid type stuff." He also admitted to having "thousands" of images on his computer. Mr. Fuller was not arrested, and he was allowed to leave.

¶12    In their search, the officers located a total of eight computers in the home. Based in part on the information that officers learned at the scene, they limited their search to Robert Fuller's two computers and Mr. Fuller's computer and thumb drive. Using ImageScan search software, officers conducted a search of Mr. Fuller's computer and discovered a host of images and videos whose titles were indicative of child pornography. An officer reviewed the files and confirmed the presence of child pornography. Accordingly, they seized Mr. Fuller's computer,

along with Robert's two computers, for additional analysis. Agent Nordstrom searched the computers further and discovered fourteen video files containing child pornography on Mr. Fuller's computer.

¶13   The United States District Attorney's Office declined to prosecute the case, but the State of Utah filed a criminal information in state district court, charging Mr. Fuller with ten counts of sexual exploitation of a minor, all second-degree felonies. Mr. Fuller thereafter filed a Motion to Suppress the evidence seized and statements he had made during the officers' search of the home. The central argument in his motion was that the warrant lacked particularity because it identified only the offending IP address, rather than the specific LimeWire user or computer. He also claimed that the officers failed to read him his *Miranda* rights. There was no evidentiary hearing, but instead the parties and the trial court relied on the search warrant application and affidavits in support of their arguments for and against the motion. The warrant itself was never made part of the record.

¶14   In support of Mr. Fuller's particularity argument, he included an affidavit from Todd Gabler, a computer forensic examiner. The affidavit describes how unauthorized users can access someone else's router. It also states that LimeWire assigns users a UsernameID, and that a user wanting to download a file can identify the host computer's MAC address, which is an identifier assigned to the host computer's network card. Finally, the affidavit explained that officers could insert a USB stick into the suspected host computer to determine whether the UsernameID was present on the hard drive. The affidavit failed to explain, however, what a MAC address was or how police could identify such an address remotely.

¶15 Following oral argument, the trial court denied Mr. Fuller's Motion to Suppress. In its Order, the trial court concluded that the warrant was sufficiently particular and supported by probable cause. The court also concluded that Mr. Fuller was not in custody at the time officers questioned him. Mr. Fuller then filed an interlocutory appeal with the Utah Court of Appeals, which was also denied. Pursuant to a subsequent plea agreement, Mr. Fuller pled guilty to five counts of voyeurism, but he reserved the right to appeal the order denying his Motion to Suppress. He was sentenced to concurrent prison terms of one to fifteen years on all five counts. The sentence was suspended, and he was placed on probation for thirty-six months and ordered to serve 180 days in jail.

¶16 Mr. Fuller timely appealed. He then filed a motion to stay imposition of the sentence pending the appeal, which was denied. As the State revealed in its briefing before us, and as was confirmed during oral arguments, Mr. Fuller failed to include a copy of the warrant in the record on appeal. Following oral arguments, the State filed a stipulated request to supplement the record with the warrant, which was identical to the warrant application presumed to constitute the warrant in the proceedings below. Because of this stipulation, we reset the case for oral argument on the merits. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

**Standard of Review**

¶17 We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact. While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case.[2]

**Analysis**

¶18 Mr. Fuller initially challenges the trial court's Order denying his Motion to Suppress on two separate grounds: first, that the warrant lacked probable cause because the affiant misrepresented facts to the magistrate and because the information in the supporting affidavit was stale; and second, that the warrant was not sufficiently particular.

¶19 We first conclude that the warrant was supported by probable cause, since Mr. Fuller forfeited his challenge under *Franks v. Delaware*.[3]  We also reject his argument that the information in the warrant application was stale, because a mere two months had passed between the initial search and the warrant application. Furthermore, we conclude that the warrant was sufficiently particular because the IP address and other corroborating information gave probable cause to search Mr. Fuller's residence for evidence of child pornography, and because the warrant properly limited the scope of the search to items that violate federal law banning the possession of child pornography. Accordingly, we affirm the trial court's order denying Mr. Fuller's Motion to Suppress.

---

[2] *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251.

[3] 438 U.S. 154 (1978).

¶20   Mr. Fuller's second argument invokes the exclusionary rule. He argues that officers questioned him in violation of his Fifth Amendment right against self-incrimination and that the exclusionary rule should therefore bar use of any attendant evidence, including Mr. Fuller's computer, as "fruit of the poisonous tree." We conclude that Mr. Fuller was not in custody at the time of questioning, so law enforcement was not required to read him his *Miranda* rights. Finally, we decline to review Mr. Fuller's state constitutional claim because it is inadequately briefed.

## I. We Affirm the Trial Court's Order Denying Mr. Fuller's Motion to Suppress Because the Warrant Was Supported by Probable Cause and Was Sufficiently Particular

¶21   The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Of these three requirements, Mr. Fuller challenges the first and the third—(1) that the warrant was not supported by probable cause, and (2) that it did not describe with sufficient particularity the devices that the government planned to search and seize. We address each argument in turn.

### A. *The Warrant Was Supported by Probable Cause*

¶22   The Fourth Amendment requires that a warrant be issued only "upon probable cause." "The information necessary to show probable cause must be contained within a written affidavit given under oath," but it does not require proof beyond a reasonable doubt; "a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing."[4] This can include evidence of a crime, contraband, fruits of a crime, or instrumentalities of a crime. And in reviewing the magistrate's determination, "we must afford the magistrate great deference."[5]

¶23   Mr. Fuller argues that the warrant lacked probable cause due to the affiant's material omissions and because the information in the warrant was stale. We reject both of these arguments because Mr. Fuller forfeited his challenge in the trial court and

---

[4] *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007).

[5] *State v. Saddler*, 2004 UT 105, ¶ 7, 104 P.3d 1265 (internal quotation marks omitted).

because the information in the application was fresh—a mere two months had passed since the initial search.

1. The Warrant Was Facially Valid

¶24 In considering a challenge to a warrant for lack of probable cause, we normally limit our review to the facts in the supporting affidavit since it is assumed that "the information put forth is believed or appropriately accepted by the affiant as true."[6] But the United States Supreme Court in *Franks v. Delaware* created a narrow exception to this general rule by permitting a defendant to challenge a search warrant using extrinsic evidence where it is alleged that the affidavit contains false statements or omissions.[7]

¶25 Where a defendant has challenged a warrant for lack of probable cause based on an alleged omission, as is the case here, the court may grant a defendant a hearing to support his claims, but only if the defendant, by a "detailed offer of proof,"[8] (1) makes a "substantial showing that the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading"[9] and (2) demonstrates "that the

---

[6] *Franks*, 438 U.S. at 164–65; *see State v. Walker*, 2011 UT 53, ¶ 13, 267 P.3d 210 (concluding that review of a magistrate's probable cause determination requires the court to "consider the affidavit relied upon by the magistrate in its entirety and in a common sense fashion" (internal quotation marks omitted)).

[7] 438 U.S. at 155–56 ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."); *see State v. Nielsen*, 727 P.2d 188, 191 (Utah 1986) (extending *Franks* to the case of omissions); *accord United States v. McKissick*, 204 F.3d 1282, 1297 (10th Cir. 2000); *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990).

[8] *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008).

[9] *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1123 (9th Cir. 1997) (internal quotation marks omitted); *see Colkley*, 899 F.2d at 300 ("The *Franks* test also applies when affiants omit material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." (internal quotation

(continued)

8

affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause."[10] The burden on the defendant here is high—he must specifically point to portions of the affidavit he claims to be misleading, though he can also introduce extrinsic evidence to substantiate his claim.[11] For example, he can include "[a]ffidavits or sworn or otherwise reliable statements" to support his claim.[12] If the defendant fails to properly substantiate his claim, he is not entitled to an evidentiary hearing.[13]

¶26   If, on the other hand, a defendant meets this burden and overcomes the presumptive validity of the warrant,[14] the defendant is entitled to a hearing but must prove by a preponderance of the evidence both that the omission in the affidavit was material and that the critical information was intentionally or recklessly excluded.[15] To show that the affiant deliberately or recklessly misled the magistrate, the defendant must offer either "direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts."[16] Such evidence can be presented through direct testimony or by affidavit.

---

marks omitted)); *State v. Missouri*, 524 S.E.2d 394, 397 (S.C. 1999) (same).

[10] *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986).

[11] *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013) ("It is relatively difficult for a defendant to make the 'substantial preliminary showing' required under *Franks.* Allegations of negligent or innocent mistakes do not entitle a defendant to a hearing, nor do conclusory allegations of deliberately or recklessly false information."); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1256 (10th Cir. 2008) (discussing the standard of review for a trial court's interpretation of an affidavit where the trial court used extrinsic evidence to aid in interpreting the affidavit).

[12] *Franks*, 438 U.S. at 171.

[13] *See United States v. Souffront*, 338 F.3d 809, 822 (7th Cir. 2003).

[14] *Id.*

[15] *Franks*, 438 U.S. at 156 (discussing the defendant's burden of proof); *Nielsen*, 727 P.2d at 191 (clarifying the *Franks* requirements in the context of an omission).

[16] *Souffront*, 338 F.3d at 822 (internal quotation marks omitted).

¶27 Critical here, and for all allegations of an intentional omission, is proof that the affiant intended to mislead the magistrate or recklessly omitted material information. Though such intent or reckless disregard for the truth "may be inferred from the omission of information from an affidavit," such an inference cannot be made unless "the material omitted would have been clearly critical to the finding of probable cause."[17] We also note that "the *Franks* threshold is even higher for defendants making claims of omissions rather [than] affirmative false statements"[18] because of the myriad inferences that can be drawn from an omission. Indeed, "[t]he mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."[19] Requiring any lower threshold of proof would "open[] officers to endless conjecture about investigative leads, fragments of information, or other matter[s] that might, if included, have redounded to defendant's benefit."[20]

¶28 And a defendant forfeits his *Franks* challenge if he does not raise it in the trial court.[21] A *Franks* challenge must "be

---

[17] *United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012) (internal quotation marks omitted).

[18] *United States v. Clenney*, 631 F.3d 658, 664 (4th Cir. 2011).

[19] *Colkley*, 899 F.2d at 301 (internal quotation marks omitted).

[20] *Id.*

[21] We acknowledge that the terms "waiver" and "forfeiture" "are often used interchangeably," *In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 51 n.1, 266 P.3d 702 (Lee, J., concurring), even though the two concepts are fundamentally different; "[w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). *See, e.g.,* UTAH R. CRIM. P. 12(f) ("Failure of the defendant to timely raise defenses or objections or to make requests which must be made prior to trial or at the time set by the court shall constitute waiver thereof . . . ."); *United States v. Lopez-Merida*, 466 F. App'x 731, 735–36 (10th Cir. 2012) (treating defendant's suppression argument as "waived" where the defendant "failed to make this argument during the suppression hearing or in the posthearing briefing"). This distinction is important because a defendant is generally precluded from

(continued)

presented to the trial court in such a way that the trial court has an opportunity to rule on that issue."[22] In other words, a defendant must specifically challenge the warrant for lack of probable cause and put the trial court on notice of his request for a *Franks* hearing.[23] On appeal, a defendant can challenge a trial court's ruling denying his *Franks* hearing or in rejecting his claim of falsity or omission, but these challenges are forfeited if not raised in the trial court, and on appeal they will be reviewed only for plain error.[24]

¶29 As an initial matter, Mr. Fuller forfeited his *Franks* challenge because he failed to request an evidentiary hearing or in any manner bring his challenge to the attention of the trial court. Indeed, Mr. Fuller's central argument in his Motion to Suppress is that the warrant lacked particularity and that the probable cause was stale. In his Motion to Suppress, Mr. Fuller never argues that the warrant lacks probable cause due to an intentional omission; in fact, he raises such an issue only once, and it is in the context of his request to have the warrant struck as insufficiently particular under the Utah Constitution. Therein, he cited to our decision in *State v. Krukowski*,[25] and stated that

---

obtaining appellate review when he *waives* a right, but he may still obtain review for plain error when the right has only been *forfeited*. *Olano*, 507 U.S. at 733 (discussing forfeiture and plain error review under Federal Rule of Criminal Procedure 52(b)).

[22] *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (internal quotation marks omitted).

[23] *United States v. Naiken*, 874 F.2d 817, *3 (9th Cir. 1989) (declining to reach defendant's argument that trial court failed to grant a *Franks* hearing where the argument was never raised before the district court).

[24] *United States v. Snow*, 228 F. App'x 203, 205–06 (3d Cir. 2007) (unpublished) ("We review for plain error a defendant's claim that the district court erred by not holding a *Franks* hearing or suppressing evidence on the basis of a fraudulent omission in the warrant affidavit, when the defendant failed to request a *Franks* hearing or raise a challenge to the truthfulness of the affidavit securing the warrant before the district court.").

[25] 2004 UT 94, ¶ 15, 100 P.3d 1222 (internal quotation marks omitted).

> [j]ust as police officers may not include materially false statements in a search warrant affidavit, they similarly cannot omit information that materially affects the finding of probable cause, and the scope of the person(s) and property to be searched and seized.

And in the single paragraph of analysis that follows, Mr. Fuller argues *overbreadth*—not that the warrant lacked probable cause.

¶30 In responding to the forfeiture concern during oral argument before us, Mr. Fuller's counsel cited to a portion of the transcript of the hearing on the Motion to Suppress. In that portion, the prosecutor suggests that, in the context of the *Leon* good faith exception, there was no basis to conclude that the "officers intentionally misled the Federal magistrate." This responsive argument by the prosecution was also insufficient, however, to put the court on notice of a *Franks* challenge. Given the above, we consider Mr. Fuller's *Franks* challenge forfeited below.

¶31 Because Mr. Fuller forfeited his *Franks* challenge, our review is limited to whether the trial court committed plain error in failing to grant Mr. Fuller an evidentiary hearing.[26] And we cannot conclude that is the case here. To obtain an evidentiary hearing when an omission is alleged, as described above, the burden was on Mr. Fuller to establish that the affiant here recklessly or intentionally omitted the MAC address or LimeWire UsernameID from the affidavit, and that the warrant would have lacked probable cause had these more specific identifiers been included. In his Motion to Suppress, Mr. Fuller brought two separate claims: one under the United States Constitution, and the second under the Utah Constitution. Although he makes references throughout both claims to the MAC address and LimeWire UsernameID, he claims only that the affiant "could have" included such identifiers. He in no way supports his Motion with any evidence that the affiant *intentionally or recklessly* omitted them.[27] We also cannot infer such intent since Mr. Fuller has failed

---

[26] *See United States v. Iiland*, 254 F.3d 1264, 1267 n.1 (10th Cir. 2001).

[27] *See McKissick*, 204 F.3d at 1297 ("The standards of deliberate falsehood and reckless disregard set forth in *Franks* apply to material omissions, as well as affirmative falsehoods.").

to establish that these identifiers were "critical" to the probable cause determination or even that "the omitted facts are so striking that the inference is compelling."[28]

¶32 Mr. Fuller also failed to demonstrate that these specific identifiers were "necessary" for a probable cause determination. Quite the opposite, Mr. Fuller concedes at several points in his Motion to Suppress that probable cause would still exist with the identifiers included, but that particularity was the issue.[29] It is here that the flaw in Mr. Fuller's argument becomes clear. If the warrant application had included the more specific identifiers, at most this would have potentially narrowed the scope of probable cause, which is really a concern over the particularity of the warrant. Including these identifiers, however, would not have altogether *prevented* a finding of probable cause, as is required by *Franks*. Because of these failures, and because "the *Franks* threshold is even higher for defendants making claims of omissions rather [than] affirmative false statements,"[30] we cannot conclude that the trial court committed plain error in failing to grant Mr. Fuller a *Franks* evidentiary hearing.

2. The Information Contained in the Warrant Was Not Stale

¶33 Mr. Fuller also challenges the warrant for lack of probable cause by claiming that the information in the warrant affidavit was stale because approximately two months had passed between the initial internet search and the warrant application. Because the lapse of time here was relatively brief, and given the facts of this

---

[28] WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 4.4(b) (5th ed. 2012).

[29] In his Motion to Suppress, Mr. Fuller contends that "[i]n addition to the searches regarding the MacID and/or Limewire UsernameID, the initial search could have been limited to determining whether or not the specific images which were downloaded on September 29, 2008, *and which gave rise to probable cause supporting the warrant*, were present on a particular computer." (emphasis added). He further states that "the agents conducting the investigation made no effort to utilize the Limewire UsernameID or the MacID of the actual computer suspected to be utilized in criminal activity, even though it could have easily been used to limit the scope of the search *to that for which they had probable cause*." (emphasis added).

[30] *Clenney*, 631 F.3d at 664.

case, we reject Mr. Fuller's staleness claim. "Staleness issues arise where so much time has passed that there is no longer probable cause to believe that the evidence is still at the targeted locale."[31] But staleness is not determined merely by the passage of time[32]— the court must make an individual determination based on the facts of the case and a variety of factors, including "the length of time, . . . the nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched."[33]

¶34 Further, "[w]hen a defendant is suspected of possessing child pornography, the staleness determination is unique because it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes."[34] And "because the crime is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography."[35] For example, information that is over a year old is not necessarily stale,[36] and in the digital age where deleted files can easily be recovered, staleness is unlikely to be as great of a concern until much more time has passed.[37]

¶35 Here, only two months had passed between the initial search and the warrant application, and federal courts have

---

[31] *State v. Norris*, 2001 UT 104, ¶ 16 n.4, 48 P.3d 872 (internal quotation marks omitted).

[32] *United States v. Trinh*, 665 F.3d 1, 13 (1st Cir. 2011).

[33] *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000) (internal quotation marks omitted).

[34] *United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (internal quotation marks omitted).

[35] *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009).

[36] *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned.").

[37] *United States v. Hay*, 231 F.3d 630, 636 (9th Cir. 2000) (rejecting a staleness claim where the probable cause affidavit stated that "even if [the defendant] had deleted the files, they could nevertheless be retrieved by a computer expert").

rejected staleness claims for much longer periods of time.[38] Also, given that the crime here involved possession of child pornography, and given the affidavit explaining how collectors of child pornography habitually "retain pictures [and other forms of child pornography] for many years," the probable cause was demonstrably still fresh. This conclusion is reinforced by the fact that the initial search uncovered an advertisement for a child pornography convention, which indicated that this behavior was likely ongoing. Finally, Agent Nordstrom's affidavit explained that child pornography can be recovered from digital storage devices even "after they have been deleted." Given the above, we reject Mr. Fuller's staleness claim and conclude that the warrant was supported by probable cause.

### B. The Warrant Was Sufficiently Particular

¶36    In addition to his probable cause argument, Mr. Fuller asks us to invalidate the warrant because it violates the particularity requirement of the Fourth Amendment. He contends that the warrant was overbroad and allowed for an exploratory search because it did not identify the specific computer(s) that were used to store and share child pornography. Specifically, he claims that federal agents could have ascertained more than just the IP address for their search—that they could have discovered the specific computer involved in downloading child pornography using a MAC address or LimeWire UsernameID. But as discussed below, including these more specific identifiers in the warrant application would not necessarily have narrowed the scope of probable cause to the specific computer, as Mr. Fuller argues. Rather, including these identifiers very well may have strengthened the State's case for probable cause, thereby permitting the magistrate to issue a warrant that was *broader* in scope.

¶37    In addition to the probable cause requirement, the Fourth Amendment requires warrants to describe with particularity both the "place to be searched, and the persons or things to be seized."[39] In order to accurately describe the "things to be seized," a warrant

---

[38] *See, e.g., United States v. Frechette*, 583 F.3d 374, 377–79 (6th Cir. 2009) (sixteen months); *Hay*, 231 F.3d at 636 (six months); *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (ten months).

[39] U.S. CONST. amend. IV.

must achieve two objectives: first, it must "suppl[y] adequate information to guide officers in selecting what items to seize"; and second, "the category of items specified in the warrant [cannot be] too broad [so that] it includes articles that should not be seized."[40] In other words, the description must be limited to the scope of probable cause established in the warrant application. That said, how particular the warrant must be necessarily depends on "the circumstances and the nature of the activity under investigation."[41]

¶38   As computers, smartphones, and other devices can now be used to store millions of files and other data—both personal and business-related—law enforcement must be increasingly cautious with respect to the particularity requirement because access to "a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs."[42] Judges must be careful in drafting the scope of the warrant, especially in determining whether the device is considered contraband, and thus subject to seizure,[43] or whether only particular *information* on the device is properly subject to seizure.[44]

¶39   In "cases involving contraband, such as drugs," more generic descriptions are allowed.[45] This is especially true where a more particular description cannot be given or where the evidence establishes that the contraband sought is "likely to be part of a

---

[40] *United States v. Evers*, 669 F.3d 645, 651–52 (6th Cir. 2012); *accord State v. Gallegos*, 712 P.2d 207, 209 (Utah 1985).

[41] *Evers*, 669 F.3d at 652 (internal quotation marks omitted).

[42] *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009).

[43] *United States v. Campos*, 221 F.3d 1143, 1147 (10th Cir. 2000) (warrant sufficiently particular where "[i]t authorized the agents to seize computer equipment which may be, or [is] used to visually depict child pornography, [or] child erotica" (second alteration in original) (internal quotation marks omitted)).

[44] *United States v. Carey*, 172 F.3d 1268, 1275–76 (10th Cir. 1999) (requiring a more specific designation of the files sought on defendant's computer related to child pornography, where original warrant granted access to search for evidence of an unrelated crime).

[45] *Gallegos*, 712 P.2d at 209 (internal quotation marks omitted).

larger collection of similar contraband located at the premises to be searched."[46] Where the warrant authorizes officers to search for child pornography, the computers or other devices used to store child pornography may be considered contraband[47] or an instrumentality of the crime.[48] Additionally, thorough searches of multiple devices may be required in these cases since "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity."[49] Because of the competing concerns here—between individual data privacy and the concern over concealed information—federal courts have required that "warrants for computer searches . . . affirmatively limit the search to evidence of specific federal crimes or specific types of material."[50]

¶40  The warrant in this case permitted law enforcement to search and seize a wide range of items, including computer hardware, software, passwords, documentation, and multiple types of digital storage devices. But the warrant also included two important limitations. First, these items could only be searched and seized if they "contain[ed] evidence related to" the alleged criminal activity—the enticement of a minor and/or distribution and possession of child pornography. Second, the warrant set forth a specific "search procedure" to prevent the officers from searching unrelated files and other information on Mr. Fuller's digital devices. Taken together, the warrant here was sufficiently particular, especially since the affidavit supporting the warrant described how child pornographers keep collections of illegal images and videos, which are often concealed, and that they do so often for prolonged periods of time.

---

[46] *Id*. (internal quotation marks omitted).

[47] *Hay*, 231 F.3d at 637 (permitting seizure of computer as contraband).

[48] *United States v. Lamb*, 945 F. Supp. 441, 462 (N.D.N.Y. 1996) ("[T]he computer may very well be an instrumentality of the crime, if it were the one being utilized to send and receive the image files of child pornography over AOL.").

[49] *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (internal quotation marks omitted).

[50] *Unites States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005); *see also United States v. Hall*, 142 F.3d 988, 996–97 (7th Cir. 1998).

¶41    Despite the above, Mr. Fuller argues that the officers could have done more by including the MAC address or UsernameID in the warrant application. If they had, he argues, the resulting warrant "would have allowed a more limited search." In other words, Mr. Fuller argues that these identifiers would have narrowed the scope of probable cause and thus restricted the magistrate to issuing a warrant that permitted a search of only the offending computer, rather than other computers or electronic devices in the home. But this is simply not the case. Speaking generally, where an officer discovers that child pornography is being transmitted over a resident's IP address, it is likely to give rise to probable cause to search the residence, particularly where the officer supports the affidavit with additional information indicating that child pornography is likely to be discovered in the home. If the officer also includes information about the offending MAC address and UsernameID in the affidavit, it would confirm in greater detail to the magistrate that child pornography was likely present in the home, thereby *strengthening* the probable cause determination, rather than weakening it.

¶42    If these identifiers had been included here, as Mr. Fuller contends they should have been, it would have more concretely confirmed the presence of child pornography in the Fullers' home and thus strengthened the probable cause determination. As a result, the magistrate could still have issued a warrant identical to the warrant in this case that authorized the search of a wide range of devices and records that were likely to contain child pornography. Given the above, we affirm the trial court's Order denying Mr. Fuller's Motion to Suppress.

## II. Mr. Fuller Was Not Denied His Miranda Rights, Because He Was Never in Custody

¶43    Mr. Fuller's final argument to suppress the evidence recovered from his computer is that Officer Brower's questioning violated his rights under both the United States Constitution and the Utah Constitution. Specifically, Mr. Fuller appeals the trial court's ruling that he was not in custody at the time of questioning. We affirm.

¶44    The Fifth Amendment of the United States Constitution, as well as Article 1, Section 12 of the Utah Constitution, safeguard an individual's right against self-incrimination. To protect this right, suspects who are in "custodial interrogation" must be read

their *Miranda* rights before questioning.[51] Whether an individual is in "custody" is an objective analysis that is informed by a reasonableness inquiry[52]—namely, whether or not a reasonable person in the suspect's position would have felt "free to leave."[53] We have previously identified four factors (the *Carner* factors) that inform this analysis: "(1) the site of interrogation; (2) whether the investigation focused on the accused; (3) whether the objective indicia of arrest were present; and (4) the length and form of interrogation."[54]

¶45 In applying the *Carner* factors, the site of the interrogation is more likely to indicate that the suspect was in custody when the location is "confined or isolated,"[55] or is "intimidating or coercive."[56] Although "questioning in a patrol car may suggest a lack of freedom on the part of the defendant," the fact that the interrogation took place in a police car is not dispositive of the custody issue and must be weighed against the defendant's voluntary choice to enter the car.[57] Under the second factor, we ask whether the "police investigation has concentrated upon the individual being questioned"[58] and whether the officers have "indicated that they had identified the defendant as a likely criminal culprit."[59] Under the third factor, the "objective indicia of arrest," we look to "whether handcuffs, drawn guns, locked doors, threats, or coercion are present."[60] Finally, under the fourth factor, the "length and form" of the interrogation, we examine the "words

---

[51] *Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

[52] *State v. Levin*, 2006 UT 50, ¶ 35, 144 P.3d 1096.

[53] *Florida v. Royer*, 460 U.S. 491, 502 (1983) (internal quotation marks omitted).

[54] *Levin*, 2006 UT 50, ¶ 36 (internal quotation marks omitted).

[55] *Id.* ¶ 39.

[56] *State v. Wood*, 868 P.2d 70, 83 (Utah 1993).

[57] *Id.* (holding that the site of the questioning, a patrol car, does not compel a finding that the defendant was in custody, especially since he "apparently entered the patrol car willingly").

[58] *State v. Benson*, 712 P.2d 256, 259 (Utah 1985).

[59] *Levin*, 2006 UT 50, ¶ 39.

[60] *Id.*

or actions" of the officers, "their meaning, and their likely impact"[61] and ask if the form of the interrogation evidenced a "clear coercive intent" on the part of the officer.[62] These factors should be reviewed under the totality of the circumstances,[63] with a view to "how a reasonable man in the suspect's position would have understood his situation."[64]

¶46 The facts in this case are not in dispute: after entering Mr. Fuller's room, officers commanded Mr. Fuller to stop using his computer, and they escorted Mr. Fuller out of the house. As they left the residence, Mr. Fuller was told that the officers were searching for the presence of child pornography. In response, Mr. Fuller openly admitted that they would find "inappropriate" material on his computer. Officer Brower then asked if Mr. Fuller would be willing to speak with him, to which Mr. Fuller agreed.

¶47 Officer Brower then led Mr. Fuller into his unmarked, unlocked police cruiser, which was parked in front of the residence. He specifically advised Mr. Fuller that he was not under arrest, that he was free to leave at any time, and that he did not have to speak if he did not want to. Mr. Fuller was not read his *Miranda* rights, but he was questioned about the suspected existence of child pornography on his computer. Although Officer Brower was armed, there is no record of the use of handcuffs or of Officer Brower ever drawing his firearm.

¶48 Given the facts above, we conclude that Mr. Fuller was not in custody and affirm the ruling of the trial court. Although the site of the interrogation was a police cruiser, the situation was not coercive. The vehicle was unlocked and Mr. Fuller was specifically told that he was free to leave at any time. Second, Mr. Fuller was not the initial focus of the investigation, as officers learned that Mr. Fuller may have been involved only after he openly admitted to possessing "inappropriate" material. Third, there were no "objective indicia of arrest" here. Though Officer Brower did have a weapon, our *Levin* decision refers to "handcuffs, *drawn* guns,

---

[61] *Id.*

[62] *State v. Mirquet*, 914 P.2d 1144, 1148 (Utah 1996).

[63] *Wood*, 868 P.2d at 83.

[64] *Levin*, 2006 UT 50, ¶ 35 (internal quotation marks omitted).

locked doors, threats, or coercion."[65] No handcuffs were used, no guns were drawn, the doors to the car were unlocked, and Mr. Fuller voluntarily spoke with officers.

¶49 Fourth, as to the words and actions of the officers, there is little evidence of any restraint, and Mr. Fuller was specifically told that he could leave at any time. In fact, even after divulging incriminating information, he was not placed under arrest. Finally, we note that this analysis is an objective one—though Mr. Fuller testified later that he did not feel free to leave, the question is whether a reasonable person would have felt free to leave under the circumstances. Under the circumstances at issue here, we conclude that a reasonable person would have felt free to leave and affirm the trial court's ruling that Mr. Fuller was not in custody.

### III. We Decline to Review Mr. Fuller's State Constitutional Claim Because It Is Inadequately Briefed

¶50 Mr. Fuller's final claim is that he should be afforded greater constitutional protections under the Utah Constitution than under the United States Constitution, but his claim is inadequately briefed. "[A] brief is inadequate if it merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority."[66] In support of his claim, Mr. Fuller cites only general statements regarding the Fourth Amendment and Article I, Section 14 of the Utah Constitution. He fails to adequately brief how the protections afforded under the Utah Constitution impact his specific Fourth and Fifth Amendment claims and includes only bare analysis of how our state constitution affords, in certain instances, greater protections than the federal constitution. Accordingly, we decline to review this claim.

### Conclusion

¶51 We affirm the trial court's Order denying Mr. Fuller's Motion to Suppress, since the warrant was supported by probable cause and sufficiently particular. We also affirm on the basis that Mr. Fuller was not in custody at the time of questioning and his *Miranda* rights were therefore not violated. Finally, we decline to

---

[65] *Id.* ¶ 39 (emphasis added).

[66] *Hill v. Superior Prop. Mgmt. Servs., Inc.*, 2013 UT 60, ¶ 46, 321 P.3d 1054 (second alteration in original) (internal quotation marks omitted).

review Mr. Fuller's state constitutional claims because they were inadequately briefed.