Associate Chief Justice LEE,
dissenting:
125 Ricardo Carrera was convicted of unlawfully possessing another person's Social Security card. In reviewing the verdict, we are not asked to reevaluate Carrera's guilt, just to decide whether the jury had sufficient evidence to find him guilty. In doing so, we "review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." State v. Pe-tree, 659 P.2d 448, 445 (Utah 19883); see also State v. Mielsen, 2014 UT 10, 1830, 326 P.3d 645. And if these inferences "have a basis in logic and reasonable haman experience sufficient to prove that [the defendant] possessed the requisite intent," we must affirm. State v. Maestas, 2012 UT 46, 1179, 299 P.3d 892 (alteration in original) (internal quotation marks omitted). In reviewing the evidence, in other words, we not only make "all inferences which may reasonably be drawn from it"; we are also supposed to "stretch the evidentiary fabric as far as it will go" in favor of the verdict. Petree, 659 P.2d at 445.
126 The majority overrides this standard in its analysis. It declines to entertain an inference that was raised at oral argument in our court and embraced there by the City[1] -an inference from Carrera's statement to police that he did not know the person whose name appeared on the Social Security card in question, without any further explanation *1073 about why he possessed a card belonging to a stranger. That inference, if permitted, is significant. It is at least arguable that an innocent person in Carrera's cireumstance would have answered more than just "no" to the question whether he knew the person in question-he would likely have tried to explain why he had the card. And a reasonable jury, if it thought about this point, could conclude that the lack of a further explanation suggested that there was none-and thus that Carrera knew he was not entitled to possess the card in question.[2]
127 The majority refuses to "indulge" this inference. Supra §17. It does so on two grounds: (a) its purported "discretion" to ignore evidentiary inferences "not raised by the parties" in their briefs, supra ¶17; and (b) a "concern{ ]" that such an inference "may well" raise constitutional problems, supra ¶ 19. Neither point is persuasive.
T28 I-find no support in our caselaw or elsewhere for the notion of appellate discretion to ignore a fair inference from. the evidence in the record-even one not briefed by the parties. Our longstanding precedent cuts strongly the other way. The standard of review that we have articulated conveys respect for and deference to the jury's assessment of the evidence. We reverse for insufficiency "only when the evidence ... is sufficiently inconclusive or inherently improbable ... that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime for which he or she was convicted." Maestas, 2012 UT 46, T 177, 299 P.3d 892 (emphasis added) (internal quotation marks omitted). "We cannot disturb the jury's conclusion just because it could have reasonably come to a different one." State v. Asheraft, 2015 UT 5, 1 80, 349 P.3d 664.
129 The logic of that standard forecloses the majority's notion of discretionary power to ignore a reasonable inference that is apparent from the record but not expressly advanced in the briefs. We rely on adversarial briefing. Certainly. But we are also supposed to engage our minds and our own analysis. If there is an inference that logically flows from the evidence in the record, we cannot properly say that "reasonable minds must have" rejected it. Maestas, 2012 UT 46, 1 177, 299 P.8d 892.
1 30 The governing standard of review tells us not to substitute our judgment for that of the jury. Surely that also means that appellate counsel's judgment (in presenting or not presenting a particular inference for our consideration) is likewise no substitute The basis for the verdiet must be in "logic and reasonable human experience" as applied to the evidence, id. 1179 (quoting State v. Hol-gate, 2000 UT 74, 121, 10 P.8d 346), not in arguments from counsel. We ignore the operative standard-and undermine the dignity of the jury verdict in our system of justice-in asserting the contrary power in this case.
[31 The majority's cases, supro 117, are not to the contrary.: Neither State v. Roberts, 2015 UT 24, 120, 345 P.3d 1226, nor Utah Department of Transportation v. Admiral Beverage Corp., 2011 UT 62, 18, 275 P.3d 208, addresses the standard of review of 'a jury verdict on sufficiency of the evidence grounds. The point raised in these cases, moreover, is beside the point here. I agree that "an issue" is "forfeited if it is not raised." © Supra 117. But the issue here is one we are reaching-sufficiency of the evidence to support the jury verdict. And we must address that issue by yielding all reasonable inferences (even those not advocated in the briefs) to support the jury verdict. A jury is not asked to anticipate what arguments may be raised on appeal. It is expected to bring to bear its full range of "logic and reasonable human experience" in rendering *1074 inferences which can reasonably and‘logically be drawn. Maestas, 2012 UT 46, ¶ 179, 299 P.3d 892- (quoting Holgate, 2000 UT 74, ¶ 21, 10 P,3d 346). We undermine that responsibility if wé set aside a verdict despite an inference that occurs to us but was not briefed by appellate counsel.
¶32 That leaves the question whether there is a constitutional barrier to the inference from Carrera’s truncated answer1 to the police. The majority does not give an answer to that question. , .And it counsels against “ventur[ing] into this constitutional briar patch” in this-case. Supra % 21. That seems wise given that the constitutional issues identified by the majority were never raised by Carrera and have not been briefed by the parties.
¶ 33 The constitutionality of the inference in question is a matter that Carrera had a chance to raise !at various points in the proceedings leading to our decision. His various failures to raise this matter at least arguably resulted in forfeiture of this argument.
¶34 The first such opportunity was at trial. I see no way to know whether “the City ... use[d] [Carrera’s] silence against him at trial.” Supra ¶ 20 n. 2. It appears to be true that the prosecution did not affirmatively ask the jury to draw an inference from Carrera’s silence. But that does not at all mean that the jury never made such an inference. And savvy counsel could certainly have moved for a limiting instruction (reminding the jury of Carrera’s right to remain silent, or in other words not to volunteer information to the police).
¶ 35 Trial, moreover, was not the only opportunity that Carrera had. Clearly the City did advocate the inference in question in the court of appeals. See supra ¶ 16. And Carr-era’s counsel raised no constitutional objection in those proceedings.
¶36 Finally, although it is true that the City’s briefing in our court failed to mention the inference in question, it was a matter addressed at length in oral argument. See supra ¶ 26. Again, if Carrera’s counsel saw a constitutional problem (a problem that was vaguely alluded to but not analyzed in any detail or by reference to any controlling authority), counsel could easily have sought leave to file a supplemental brief.
¶ 37 The majority is right that “we cannot draw ... an inference if that inference is constitutionally impermissible.” Supra ¶ 19. But the court is not so concluding. It is only saying that there “may well be” constitutional problems here—that there are “Miranda and due process concerns” that “may ultimately” stand in the way of an inference from Carrera’s partial answer to the police. Supra ¶ 19. The phrasing is significant. Given the lack of briefing and the difficulty of the issues, the court is not rejecting the inference in question on constitutional . grounds. It is expressly declining to do so. After all, a constitutional “concern[ ]” is only a question, and the notion that there “may well be” constitutional problems is the same thing as saying .that there “may not be.” Supra ¶ 19.
¶ 38 In all events, we have meaps for answering questions not adequately answered in the parties’ briefs, We can (and should) order supplemental briefing. Sometimes such orders even resolve factual questions that seem unanswered on a “scant” record. Supra ¶ 20. In State v. Fuller, 2014 UT 29, ¶ 16, 332 P.3d 937, for example, we ordered supplemental briefing when we noticed that an arrest warrant of significance to our analysis did not seem to appear in the record. And the response we' received included a stipulation from the parties. See id. I see no reason to assume that we would get no such help in this case. If the court is truly concerned about the constitutional question it identifies,.it should order supplemental briefing. Once we get the briefing we will then be equipped to determine whether such inference is “constitutionally permissible.” Supra ¶ 19.
¶ 39 Unless and until we do so, we should not confuse the analysis by identifying a concern we are unwilling to resolve. We can’t have it both ways. Either we address the constitutional problem or we set it aside. It makes nó sense to identify constitutional “concerns” if we are unwilling to dive into the analysis necessary to resolve them.
¶40 The constitutional issues in this case are at least deserving of supplemental brief *1075 ing. To know whether the inference in question would raise a Fifth Amendment problem, we would need answers to two sets of important questions: (a) whether an inference from a partial answer to a police question in these cireumstances, would implicate the Fifth Amendment; and (b) whether Carrera may have forfeited any Fifth Amendment concern in this case () by answering, the officer's question after a Miranda warning was read (if it was, and we can't tell from this record), (i) by failing to raise an objection at trial, or (iii) by failing to raise an argument in the court of appeals.
[ 41 None of these issues were briefed. So 'we are in no position to dispose of the case on the basis of our concerns about a potential Fifth Amendment problem.
T42 I respectfully dissent for these reasons. I see no room in our standard of review for ignoring the inference that the majority rejects. And the constitutional issues the court raises merit further analysis after supplemental briefing. |

. Our decision shouldn't turn on this point for reasons explained below. But the oral argument transcript is clear. When counsel for the City was asked whether Carrera's answer to police opened the door to an inference against him, counsel answered in the affirmative. And during oral argument both sides debated the viability of such an inference. The majority is right that the City did not "weigh in" in any detail on the ° extent of any constitutional problems with an inference from a partial answer to police questioning. Supra 119 n. 1. But there is no doubt that the City "affirmatively embraced the inference." Supra 119 n. 1. Thus, counsel's analysis invited the court to consider "the totality of the evidence rather than this limited interaction between Carrera and the officer, supra 119 n. 1, but that "totality" expressly encompassed the inference in question. rar

. The majority questions whether "a fair inference of guilt" can be drawn from Mr. Carrera's limited response. Supra 118. But surely an innocent person would have been more fikely to say more-or, more specifically, a reasonable jury could infer that an innocent person in his circumstance would likely do so.
The applicable standard is far more deferential than the majority's application of it. It directs us to sustain the jury's verdict if any inference could "reasonably" be drawn from the "evidentiary fabric" of the case (stretched "as far as it will go'"), State v. Petree, 659 P.2d 443, 445 (Utah 1983), and informed by any "basis in logic and reasonable human experience," State v. Maestas, 2012 UT 46, T 179, 299 P.3d 892.