**2017 UT App 98**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JAVIER SANCHEZ-GRANADO,
Appellant.

Per Curiam Opinion
No. 20160651-CA
Filed June 15, 2017

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 151401609

Marshall Thompson and Brock Van De Kamp,
Attorneys for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

Before JUDGES J. FREDERIC VOROS JR., STEPHEN L. ROTH, and
DAVID N. MORTENSEN.

PER CURIAM:

¶1     Javier Sanchez-Granado appeals his conviction for possession with intent to distribute a controlled substance, a second degree felony. Sanchez-Granado entered a conditional guilty plea, reserving the right to appeal from the district court's denial of his motion to suppress. We affirm.

¶2     Sanchez-Granado claims that the district court erred by (1) adopting the subjective view of one of the police detectives rather that applying an objective standard and (2) failing to consider the "numerous innocent explanations of [his] actions within the totality of the circumstances." In sum, Sanchez-Granado claims that under the totality of the circumstances, the

detectives did not have an objectively reasonable suspicion to support his detention. "We review a trial court's decision to grant or deny a motion to suppress for an alleged Fourth Amendment violation as a mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. "While the court's factual findings are reviewed for clear error, its legal conclusions are reviewed for correctness, including its application of law to the facts of the case." *Id.* Accordingly, "we review as a matter of law whether a specific set of facts gives rise to reasonable suspicion." *State v. Gurule*, 2013 UT 58, ¶ 20, 321 P.3d 1039 (citation and internal quotation marks omitted).

¶3 The motion to suppress was based on the testimony of Detective Denise Lovendahl in the preliminary hearing in the underlying case and the testimony of Detective Lovendahl and Detective Scott Lloyd in the preliminary hearing of a co-defendant. The district court made the following findings. On May 18, 2016, Detective Lovendahl was watching a Wal-Mart parking lot in Salt Lake County. Detective Lovendahl had been involved in investigating drug cases for seven years. On May 18, she was monitoring an area that, in her experience, had been a location where drug sales occurred. She watched a white Lexus sedan occupied by two males for approximately twenty minutes. During that time, the occupants did not leave the vehicle, but they appeared to be using cell phones and watching the lot. Detective Lovendahl contacted Detective Lloyd, who joined in the surveillance in a separate vehicle. After about twenty minutes, the Lexus moved to another part of the parking lot, where it met a Chevy Tahoe and a motorcycle. A passenger from each of those vehicles climbed into the back seat of the Lexus. The driver of the Tahoe and the motorcycle rider remained where they were. "Based on their experience in drug enforcement, the detectives believed that this pattern of behavior indicated that drugs were likely being sold in the Lexus." The detectives therefore approached the vehicles to investigate the suspicious activity.

¶4     Detective Lloyd activated his red and blue lights to notify the suspects that he was a police officer.[1] The motorcycle fled at a high rate of speed. The Tahoe attempted to forcefully back up, but it was blocked by Detective Lovendahl's vehicle, whereupon Detective Lovendahl activated her red and blue lights. Detective Lloyd approached the Lexus on foot and observed that a backseat passenger was holding a folding knife in one hand and cash in the other. He also observed that the center console was open and that it contained a baggie full of colorful balloons typically used to package drugs for individual sale and distribution. The front seat passenger's hand was in the console. Sanchez-Granado—the driver—was attempting to close the console. Based on Detective Lloyd's observation of a weapon and the balloons located in the center console, the detectives then developed probable cause to search the vehicle. They recovered a large knife under the front passenger seat and heroin and cocaine in the center console.

¶5     In the preliminary hearing in this case, Detective Lovendahl testified that she was watching the parking lot because, based on her past experience, it was a location for drug trafficking. She testified that in her seven years of experience working drug cases, when you see a person in a vehicle where the occupant is on their phone, looking around, "sitting there for a while, they pull up and meet with another car and two people get in it, then it's typically a drug deal." She had watched the Lexus long enough "to know that they weren't doing anything in the store," and she "just recognized it to be likely dealers waiting for people to show up." Detective Lovendahl testified, "At that point, I realized they were likely doing a drug deal and so we pulled up to go see what they were doing." Her intention was to walk up and see what they were doing in the car.

---

1. The parties agree that the defendants were detained at this moment.

¶6    Sanchez-Granado attached the preliminary hearing transcript for his co-defendant to the motion to suppress. There, Detective Lloyd testified that "we have continued problems of high drug activity in the parking lot at Wal-Mart." He further testified that "from my experience in the parking lot," the behavior exhibited in this case was "consistent with drug trafficking and drug dealers." Detective Lloyd was familiar with the location through his experience with loss prevention and drug activities in the parking lot. He testified that at that location, it was suspicious activity for the vehicle to be in the parking lot for so long, with its occupants looking around, and then parking and having another vehicle park in front of their vehicle and then have passengers from that vehicle enter a defendant's vehicle. Detective Lloyd noted as other indications of drug activity "the mannerisms, looking about the parking lot, not going into the store, [and] two separate parties that are coming from two different vehicles enter into a vehicle." Due to these suspicious activities, Detective Lloyd moved behind the Lexus and activated his lights. As he walked up to the Lexus, he saw a rear seat passenger with a knife. In the center console, he "could clearly see a baggie [containing] smaller, colorful balloons that are consistent with . . . distribution or selling of drugs."

¶7    In the co-defendant's preliminary hearing, Detective Lovendahl testified to largely the same facts that she described in Sanchez-Granado's preliminary hearing. On May 18, she was in the Wal-Mart parking lot "because we have a drug problem." She observed the Lexus with two male passengers exhibiting "kind of typical drug behavior that I've seen several times [in] many arrests." The detectives watched the Lexus for about twenty minutes. The occupants did not go into a store. They pulled around to the west side of the lot, where a Tahoe pulled in front of the Lexus and a motorcycle pulled in next to the Lexus. She testified that when the passenger from the Tahoe got in the backseat of the Lexus, and a passenger from the

motorcycle got into the other side of the Lexus, the detectives "moved up because it's typical for drug deals to happen that way."[2] Detective Lovendahl indicated that she generally agreed with Detective Lloyd's description of the subsequent events.

¶8    Sanchez-Granado moved to suppress the evidence based on a claim that the detention was a level-two stop that was not supported by a reasonable articulable suspicion. Sanchez-Granado argued that the behavior observed by the detectives had a number of potentially innocent explanations and that the district court erred in relying only on subjective interpretations of the facts by the detectives. The district court ruled that, "Based on their experience, the facts they observed, and the reasonable inferences they made, the detectives formed [a] reasonable articulable suspicion that drugs were being sold in [Sanchez-Granado's] vehicle." The district court also ruled that "[t]he initial detainment, even if it happened before the flight or attempted flight took place, was legally supported by reasonable articulable suspicion." The district court relied on *State v. Markland*, 2005 UT 26, 112 P.3d 507, as support for its determination that the officers had a reasonable articulable suspicion to justify the detention in this case.

---

2. Sanchez-Granado argues that there was a disagreement between the two detectives about whether there was a reasonable suspicion to detain the Lexus. That claim is not supported by the record. Detective Lloyd's alleged disagreement was in his answer to a question about whether there would have been a reasonable suspicion to support detaining the Tahoe at the time he was walking up to the Lexus to investigate suspicious activity and before his observations of the knife and potential drug evidence. This does not support the claim that Detective Lloyd disagreed with Detective Lovendahl's assessment of the facts gleaned from the surveillance of the Lexus.

> When reviewing a given factual situation to determine if reasonable suspicion justified a detention, "[c]ourts must view the articulable facts in their totality and avoid the temptation to divide the facts and evaluate them in isolation." *State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590. Courts must also "judge the officer's conduct in light of common sense and ordinary human experience and . . . accord deference to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (internal quotation and citations omitted); *accord Warren*, 2003 UT 36 at ¶¶ 20–21, 78 P.3d 590 (stating that courts should consider officers' subjective assessment of the facts).

*Markland*, 2005 UT 26, ¶ 11(alteration and omission in original).

¶9    Sanchez-Granado's motion to suppress argued that the detectives did not observe any illegal behavior prior to making the stop. Instead, the conduct occurred in a large busy parking lot in the middle of the day and Sanchez-Granado and his passenger "were seen doing what ordinary people would be doing if waiting for friends, taking a break for lunch, waiting for a ride," and so forth. Accordingly, he claimed that the detectives had no reasonable articulable suspicion to support the investigatory stop.

¶10    "A police officer has reasonable, articulable suspicion when the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'" *State v. Anderson*, 2013 UT App 272, ¶ 12, 316 P.3d 949 (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In evaluating whether the reasonable articulable suspicion standard has been met, "a court

considers the totality of the circumstances to determine whether, taken together, the facts warranted further investigation by the police officer." *Id.* ¶ 13 (citation and internal quotation marks omitted). "[I]t is settled law that an officer is not obligated to rule out innocent conduct prior to initiating an investigatory detention." *Markland*, 2005 UT 26, ¶ 17. "Rather we accord deference to an officer's ability to distinguish between innocent and suspicious actions." *Anderson*, 2013 UT App 272, ¶ 17 (citation and internal quotation marks omitted). Thus, while "experience and training alone might lead to only a hunch," where an officer "articulated a basis in his specific observations . . . to justify confidence in the suspicion he developed from the application of his training and experience to the facts and circumstances before him," a court may defer to the officer's "ability to distinguish between innocent and suspicious actions." *Id.* ¶ 27 (citation and internal quotation marks omitted). "As long as the underlying facts, and reasonable inferences drawn from those facts, justify the conclusion that reasonable suspicion existed at the inception of a level-two stop, the Fourth Amendment is satisfied." *Markland*, 2005 UT 26, ¶ 19.

¶11 The district court in this case reached its conclusion that the detention was supported by reasonable suspicion based on its examination of the totality of the circumstances. The district court first noted the experience and expertise of the investigating detectives, who had knowledge that drugs had been sold in the location by persons who exhibited behavior similar to what the detectives observed here. Neither Sanchez-Granado nor his passenger exited the vehicle or entered the store, but they appeared to be using their cell phones and watching the parking lot for about twenty minutes. The detectives explained that this behavior is typical of someone who is selling drugs and meeting a buyer. Sanchez-Granado drove the vehicle to another part of the lot, where the Lexus met the Tahoe and motorcycle as they arrived. A passenger from each vehicle got into the back seat of the Lexus. Detective Lovendahl testified that this was "the

clincher" that a drug buy was likely occurring. The district court concluded that "[b]ased on their experience, the facts they observed, and the reasonable inferences they made, the detectives formed a reasonable articulable suspicion that drugs were being sold in [Sanchez-Granado's] vehicle."

¶12    Contrary to Sanchez-Granado's assertion that the district court failed to consider potentially innocent explanations for the observed behavior, the district court specifically acknowledged this argument. However, the court correctly stated that "the detectives were not required to eliminate all or any possible innocent explanation for [Sanchez-Granado's] behavior to arrive at their reasonable articulable suspicion of criminal conduct." At most, Sanchez-Granado challenges the weight given to his arguments. Under the circumstances, the district court did not err in concluding that the totality of the circumstances supported a reasonable articulable suspicion to justify the level-two stop. The district court's decision also clarifies that the court did not consider the flight of the motorcycle or the attempted flight of the Tahoe in reaching its determination regarding reasonable suspicion.

¶13    The totality of the circumstances supported the district court's conclusion that the detectives had a reasonable articulable suspicion to detain Sanchez-Granado's vehicle in a level-two stop to conduct a further investigation. *See Anderson*, 2013 UT App 272, ¶ 28. We affirm.

─────────