2008 UT App 288

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel Lee KEENER, Defendant and Appellant.**

No. 20070485–CA.

Court of Appeals of Utah.

July 25, 2008.

Debra M. Nelson and Andrea J. Garland, Salt Lake City, for Appellant.

Mark L. Shurtleff, atty. gen., and Jeffrey S. Gray, asst. atty. gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Daniel Lee Keener appeals his convictions for one count of unlawful possession of a controlled substance with intent to distribute and one count of endangerment of a child. Keener argues that the district court erroneously denied his motion to suppress where the search warrant was issued without an adequate showing of probable cause. We affirm.

## BACKGROUND

¶ 2 On December 9, 2005, Detective Doug Teerlink prepared the affidavit forming the basis for the search warrant on Keener's residence. The affidavit related information gathered from "a concerned citizen named Gary Lambson." Lambson had met with Keener's father, who had taken Lambson to Keener's house. At the house, Keener's father showed Lambson a bag of jewelry, from which Lambson purchased a ring for $50. While at the house, Lambson also saw "two large bags of marijuana and a triple beam scale" on a table in a back room. Lambson reported that one bag contained "chronic marijuana" and the other bag contained "lower grade marijuana." After he bought the ring, Lambson tried to pawn it, but the clerk at the pawn shop recognized the ring as stolen and called the police. When the police arrived, they questioned Lambson about the ring, and Lambson was able to identify from a list of stolen jewelry other items that were in the bag that he had seen at Keener's residence.

¶ 3 Also on December 9, 2005, an affidavit was prepared by Detective Michael Hardin to obtain a search warrant for the residence of Keener's father. This affidavit likewise relied on information from Lambson and recounted the same information regarding the stolen property recited in the Teerlink affida-

vit. The Hardin affidavit, however, also related that Lambson was a person "who was detained by Murray Police, concerning a stolen ring."

¶ 4 The two affidavits were presented together to Judge Judith Atherton that same day. Judge Atherton reviewed the affidavits and issued two search warrants. Based on the evidence obtained through the execution of the warrant on Keener's residence, Keener was ultimately charged with one count of unlawful possession of a controlled substance with intent to distribute, three counts of endangerment of a child, and one count of unlawful possession of drug paraphernalia.

¶ 5 Keener filed a motion to suppress the evidence obtained via the search of his residence, arguing that the search violated his rights under both the federal and state constitutions. Specifically, Keener argued that the affidavit in support of the warrant contained intentionally or recklessly made misstatements and that the facts set forth in the affidavit did not give probable cause for the search. The district court denied Keener's motion, reasoning that there was probable cause sufficient to issue the search warrant because the affidavit "contained a detailed account of a transaction at [Keener's] residence involving the purchase of reportedly stolen merchandise"; the affidavit contained information about the marijuana that was "specific as to quantity, type, and location"; the detectives disclosed Lambson's identity; "Lambson obtained his information first-hand"; and Lambson "was willing to stand behind the information despite being threatened with prosecution if it turned out to be false." The district court also determined that because the affidavit was "submitted alongside" the Hardin affidavit, which "dispelled any false impression" about Lambson's status, and because Detective Teerlink knew that the two affidavits would be reviewed together, there was no misstatement and, thus, the court did not need to reach Keener's argument that the Utah Constitution would require suppression if the affidavit contained an intentional misstatement, even if that misstatement was immaterial.

¶ 6 Keener entered conditional guilty pleas on the count of possession of a controlled

substance with intent to distribute and on one of the counts of endangerment of a child; the remaining charges were dismissed. The district court sentenced Keener to two prison terms of zero to five years, suspended those prison terms, and placed Keener on probation for thirty-six months. Keener now appeals the district court's denial of his motion to suppress.

## ISSUE AND STANDARDS OF REVIEW

¶ 7 Keener argues that the district court erred in denying his motion to suppress the evidence gathered from the execution of the search warrant on his residence. "We review the factual findings underlying the trial court's decision to grant or deny a motion to suppress evidence using a clearly erroneous standard. We review the trial court's conclusions of law based on these facts under a correctness standard."[1] *State v. Brown*, 853 P.2d 851, 854–55 (Utah 1992).

## ANALYSIS

### I. The United States Constitution

¶ 8 The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. Keener argues that the warrant issued to search his residence was not supported by probable cause. He specifically points to the fact that Lambson was being held and questioned by the police and was not, as the affidavit stated, merely "a concerned citizen."

¶ 9 We review a magistrate's probable cause determination to ascertain whether "the magistrate had a 'substantial basis for . . . [concluding]' that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (omission and alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)); *accord State v. Norris*, 2001 UT 104, ¶ 14, 48

P.3d 872. In so doing, we employ a "totality-of-the-circumstances analysis." *Gates*, 462 U.S. at 238, 103 S.Ct. 2317; *accord State v. Saddler*, 2004 UT 105, ¶ 11, 104 P.3d 1265. This is because "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes from many different types of persons." *Gates*, 462 U.S. at 232, 103 S.Ct. 2317.

■ ¶ 10 Although we are not bound to specific legal rules in our analysis of Lambson's information, *see id.*, we nonetheless recognize the importance of Lambson's status as an informant. When information provided by an informant is the primary support for a search warrant, we pay particular attention to the type of informant involved in order to assess the reliability of that information. *See id.* at 233, 103 S.Ct. 2317 (acknowledging the importance of the informant's veracity and reliability in assessing the overall reliability of the information). Both anonymous informants and criminal informants are low on the reliability scale, but citizen informants are high on the reliability scale and are entitled to a presumption of veracity, *see State v. Purser*, 828 P.2d 515, 517 (Utah Ct.App.1992) ("[R]eliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information." (citing *State v. Bailey*, 675 P.2d 1203, 1206 (Utah 1984))). *See Kaysville City v. Mulcahy*, 943 P.2d 231, 235 (Utah Ct.App.1997).

¶ 11 Lambson was clearly not a citizen informant entitled to a presumption of veracity. But notwithstanding the fact that the Teerlink affidavit referred to Lambson as "a concerned citizen," it appears that Judge Atherton was aware that this was not an accurate representation as to the type of informant Lambson was, i.e., that he was not

---

1. Keener, citing *State v. Deluna*, 2001 UT App 401, ¶ 9, 40 P.3d 1136, argues that we need not give any deference to the district court's findings of fact in support of its refusal to suppress evidence. This is a misreading of *Deluna*, which provides only that we give no deference to "the trial court's determination *of the sufficiency of*

*the written evidence.*" *Id.* (emphasis added) (internal quotation marks omitted). This determination of sufficiency, while sometimes referred to as a "finding," is not a true finding of fact but is, rather, a conclusion of law. Thus, the referenced language from *Deluna* is not inconsistent with the standard of review that we employ here.

simply providing police with information out of a sense of civic duty. In the district court's decision on Keener's motion to dismiss, the court noted that Detective Teerlink's characterization of Lambson as a concerned citizen would have been "troubling" had that affidavit stood alone. We agree. But the court found that "[the affidavit] did not stand alone; rather, it was submitted alongside Detective Hardin's affidavit, which pointed out that Lambson had been 'detained by Murray Police' regarding 'a stolen ring.'"[2] This finding was based on the district court's asking whether "the affidavits [were] submitted to Judge Atherton simultaneously" and Detective Teerlink's affirmative response to that question. Keener contests this finding, arguing that Judge Atherton might not have actually considered the affidavits at the same time, that she "could have" had many other affidavits before her,

2. Keener asserts that we may not consider that the two affidavits were presented together because our analysis is strictly limited to what is contained within the four corners of the Teerlink affidavit. We are unpersuaded by this argument. The cases that Keener cites in support of his argument do not support such a strict rule. For example, Keener cites to language in *State v. Deluna*, 2001 UT App 401, 40 P.3d 1136, that a reviewing court "is bound by the contents of the affidavit." *Id.* ¶ 9 (internal quotation marks omitted). But when read in context, this language simply requires that probable cause be based on the "written evidence" before the magistrate. *See id.* Keener also relies on *United States v. Frazier*, 423 F.3d 526 (6th Cir.2005), which only goes so far as to state that because the review of sufficiency of the evidence was limited to the affidavit's four corners, the court could not consider *the affiant's testimony* regarding additional facts supporting probable cause. *See id.* at 531. Further, even the cases that *Frazier* cites in support of the "four corners" language only address situations where the information was not in any written materials presented to the magistrate. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate."); *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention."), *overruled on other grounds by Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir.1973) ("We, therefore, reaffirm the requirement that all facts and circumstances relied upon for the issuance of a federal warrant be found in the written affidavit. This ensures that the commissioner may judge for himself the persuasiveness of the precise facts relied on to show probable cause and that the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories." (internal quotation marks omitted)).

In contrast, as the State points out, cases that have addressed the specific issue now before us—where the vital information was contained in interrelated warrants presented to the magistrate together—support the result we reach here. *See, e.g., United States v. Fogarty*, 663 F.2d 928, 929–30 (9th Cir.1981) (per curiam) ("We have been cited to no restriction which limits a magistrate to the four corners of a single affidavit when facts are presented simultaneously in two related affidavits seeking two warrants.... [W]e can think of no Fourth Amendment reason why the magistrate had to read either affidavit with tunnel vision."); *United States v. Nolan*, 413 F.2d 850, 853 (6th Cir.1969) ("We believe that consistent with the Fourth Amendment the facts supplied the Commissioner by both affidavits could be taken into account by him in determining probable cause in relation to each."); *United States v. Serao*, 367 F.2d 347, 350 (2d Cir.1966) ("It would be hypertechnical for the Commissioner not to act upon an entire picture disclosed to him in interrelated affidavits presented to him on the same day."), *vacated and remanded on other grounds sub nom., Piccioli v. United States*, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968) (per curiam); *State v. Smith*, 836 S.W.2d 137, 140 (Tenn.Crim.App.1992) (characterizing the issue not as whether one affidavit formally referenced the other but, instead, as "whether or not the magistrate had sufficient facts before him, under oath, in affidavit form, to conclude that probable cause existed"). Although the affidavits here pertained to different defendants, the affidavits were obviously interrelated—they relied on the same informant, related the same course of events, contained largely identical language regarding these events, and were presented at the same time. Judge Atherton was therefore not required to consider the affidavits in isolation from one another. Moreover, the above cases cited by the State and the resulting treatment of the affidavits here seem more harmonious with the general principle behind warrants: "A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (alterations in original) (citation and internal quotation marks omitted).

and that she may have "presumably" not made a connection between the two affidavits. However, Keener points to no evidence indicating that any of these possibilities occurred. Thus, with the only evidence before the district court being Detective Teerlink's testimony that the affidavits were submitted simultaneously, we cannot say that the district court's finding to this effect was clearly erroneous, i.e., "against the clear weight of the evidence" or leading us to "a definite and firm conviction that a mistake has been made," *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).[3]

¶ 12 Keener further argues that absent Lambson being a concerned citizen, with a presumption of validity, there was not sufficient support in the affidavit to establish probable cause. The district court concluded

that notwithstanding Lambson's true status, "Judge Atherton 'had a substantial basis for determining that probable cause existed and that evidence of illegal conduct would be found at' [Keener's residence]." (Quoting *Norris*, 2001 UT 104, ¶ 16, 48 P.3d 872.) We see no error here. "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236, 103 S.Ct. 2317 (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)); *accord State v. Babbell*, 770 P.2d 987, 991 (Utah 1989). The fact that Lambson's account was a first-hand observation; the details related in that account, including the quantity, location, and grade of drugs;[4] the fact that Lambson had been threatened with prosecution for a false report;[5] and Keener's criminal history[6]—

3. Keener additionally asserts that the affidavit erroneously omitted Lambson's specific criminal history. But the two affidavits would have made Judge Atherton aware that Lambson was being held by the police concerning the stolen ring, and the Teerlink affidavit mentioned that Lambson had a criminal history. We agree with the State that the specifics of Lambson's minor prior criminal history—having been arrested twice on charges that were ultimately dismissed, and having been convicted of two traffic-related misdemeanors and one misdemeanor charge of alcohol consumption by a minor—would have made no real difference in Judge Atherton's determination. This information would have, at most, spoken to the reliability of Lambson, which was already low on the reliability scale because of his status as a criminal informant and which low reliability had to be—and was—compensated for in other ways. *See infra* note 4.

4. Keener primarily focuses on the lack of corroboration of the information on the part of Detective Teerlink. Keener cites to a few cases from other states to argue that where the information comes from a criminal informant, it is insufficient to support probable cause unless the police "corroborate the allegations of criminal activity." We reject this argument. Although corroboration is a factor to be considered in the totality-of-the-circumstances analysis, it is not an element specifically required to establish probable cause. *See State v. Saddler*, 2004 UT 105, ¶¶ 8–11, 104 P.3d 1265. Instead, a deficiency in the informant's reliability may be compensated for "by a strong showing [of his basis of knowledge] or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S.Ct. 2317. Thus, information from a less-than-reliable informant requires additional evidence to establish that it is reliable; however, we do not agree that such

evidence *must* include the type of corroboration Keener advocates. Indeed, were he correct that the police must corroborate the damning aspects of information given by criminal informants, such information would be of little use to the police, who would themselves have to obtain all the information supporting probable cause before they could obtain a search warrant.

5. Keener argues that the fact that Lambson was threatened with prosecution for a false report is not significant, asserting that in light of the charges for which Lambson was currently being investigated, the potential criminal liability from a false report was trivial. Nonetheless, the threatened prosecution is still a factor to be considered in the totality-of-the-circumstances analysis. Likewise, we may also consider that providing the information may have been against Lambson's penal interest to the extent that it showed the suspicious circumstances surrounding his possession of the stolen ring and may have eliminated one of his defenses to the crime. Further, although Keener argues that the information was less reliable because Lambson had been caught "red-handed" in a crime and was only trying to "curry favor with police," we note that it was likely that Lambson, who was still in custody, realized that he could not curry favor by sending the police on a wild goose chase based on bad information.

6. Keener argues that the information in the affidavit setting forth his criminal history did nothing to establish probable cause. We agree that such information would never alone be sufficient to *establish* probable cause, and we acknowledge that prior criminal history may be too old to even *support* a probable cause determination, see, e.g., *State v. Brooks*, 849 P.2d 640, 644 (Utah Ct.App. 1993) (determining that the defendant's criminal

when evaluated together under the "flexible totality-of-the-circumstances standard," *see Saddler,* 2004 UT 105, ¶ 11, 104 P.3d 1265, and when giving Judge Atherton due deference—were sufficient to establish probable cause and allow the issuance of the search warrant.

## II. The Utah Constitution

¶ 13 The provision regarding search warrants in the Utah Constitution contains virtually identical language to the warrant provision in the federal constitution. *Compare* Utah Const. art. I, § 14, *with* U.S. Const. amend. IV. Nonetheless, we recognize that the state provision is occasionally interpreted more expansively when such interpretation "will more appropriately protect the rights of this state's citizens." *State v. DeBooy,* 2000 UT 32, ¶ 12, 996 P.2d 546; *see also State v. Tiedemann,* 2007 UT 49, ¶ 34, 162 P.3d 1106 ("Utah's search and seizure provisions (which are identical to those in the federal constitution) provide a greater expectation of privacy than the Fourth Amendment as interpreted by the United States Supreme Court." (internal quotation marks omitted)).

¶ 14 Under a federal constitutional analysis, suppression of evidence is required only when a misstatement or omission on the part of the police was material to the establishment of probable cause. *See State v. Nielsen,* 727 P.2d 188, 191 (Utah 1986) ("Deterrence of police misconduct is not to be a factor in the decision to suppress unless the misconduct materially affects the finding of probable cause." (discussing *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978))). Keener argues that under the state constitution, suppression of evidence should be required whenever the affidavit supporting a search warrant contains intentionally or recklessly made misstatements or omissions, regardless of whether those misstatements or omissions are material. We recognize that this issue has not yet been determined by Utah appellate courts but has been left as an "open question" by the Utah Supreme Court, *id.* at 193, and that there is some evidence that Detective Teerlink intentionally or recklessly misidentified Lambson. Although we agree with the supreme court that the federal law in this area "is not entirely adequate," *id.,* we also must leave the question for another day as this issue is not actually before us because there was no misrepresentation here.[7] Whereas Judge Atherton considered the two affidavits together, which, in combination, did not misrepresent Lambson's status as a criminal informant, there was no misstatement or omission-made intentionally, recklessly, or otherwise-under the specific facts of this case, and we therefore do not reach the state constitutional issue.

## CONCLUSION

¶ 15 Because the two affidavits were considered together, Judge Atherton was not misled regarding Lambson being a concerned citizen with a presumption of reliability. Nonetheless, even considering that Lambson was afforded only the low level of reliability of a criminal informant, when we consider the other information presented in the affidavit under a totality-of-the-circumstances analysis, Judge Atherton had a substantial basis to conclude that evidence of wrongdoing would be found at Keener's residence. And although we recognize that the state constitutional protection against unreasonable searches and seizures is broader

---

record did nothing to establish that he was currently dealing drugs because his most recent arrest was two years prior to the affidavit being made). Thus, the robbery and burglary parts of Keener's criminal history, which were for arrests from five to fourteen years prior to the affidavit, do not support a finding of probable cause. However, the drug-related arrests—the most recent of which was only seven months prior to the affidavit—may be part of the circumstances considered in a probable cause determination. Furthermore, even without considering Keener's criminal history, we believe that Judge Atherton

had a substantial basis to believe that a search would reveal drugs at Keener's residence.

7. We do, however, emphasize that "[t]here is no stronger argument for developing adequate remedies for violations of the state and federal constitutional prohibitions on unreasonable searches and seizures than the example of a police officer deliberately lying under oath in order to obtain a search warrant." *State v. Nielsen,* 727 P.2d 188, 192–93 (Utah 1986). We further caution that such misconduct on the part of the police may give rise to a civil cause of action. *See id.* at 193.

than the similar federal constitutional protection, Keener's argument in this regard is not warranted under the circumstances of this case. Accordingly, we affirm the district court's denial of Keener's motion to suppress the evidence obtained from the search of his residence.

¶16 I CONCUR: GREGORY K. ORME, Judge.

¶17 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.