2011 UT App 242

**STATE of Utah, Plaintiff and Appellee,**

v.

**Laree C. HANSEN, Defendant and Appellant.**

**No. 20100522–CA.**

Court of Appeals of Utah.

July 29, 2011.

Samuel P. Newton, Ogden, for Appellant.

Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee.

Before Judges McHUGH, ORME, and THORNE.

## MEMORANDUM DECISION

McHUGH, Associate Presiding Judge:

¶ 1 Defendant Laree C. Hansen appeals her conviction for possession or use of a controlled substance in violation of Utah Code section 58–37–8(2)(a)(i), *see* Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.2010),[1] arguing that the trial court erred in denying her motion to suppress evidence. We affirm.

¶ 2 At two in the morning on September 7, 2009, Officers Gorman and Froerer responded to a burglary complaint made by an acquaintance of Hansen (Grandson).[2] Grandson's report to dispatch indicated that he was hiding in a bathroom because he believed that there were two unknown males in his grandmother's (Grandmother) house, where he also lived. When the officers knocked on Grandmother's door, Grandmother answered immediately and asked them why they were there. After the officers explained the situation, Grandmother invited them inside and escorted them upstairs where they encountered Grandson exiting the shower. Grandson explained that while he was in the bathroom, he heard noises and called for Grandmother. When she did not answer, he became frightened because of "all of the gang stuff that had been going on" and called the police. Officer Gorman noted that Grandson "seemed very strange and kept pacing back and forth as he talked."

¶ 3 While the officers spoke with Grandmother and Grandson, "someone started banging loudly on the back patio door which scared [Grandmother]." Officer Gorman "went to the back door and observed [Hansen] peering inside through the glass door." He opened the door and Hansen "stepped back and began walking around the small deck in quick jerky steps. [Hansen] was clutching a small black purse tightly to her body and kept looking around and jerking her head back and forth." When asked what she was doing, Hansen responded that "she was there to see [Grandson]." When Officer Gorman asked her to sit down on a bench on the deck, she "could not sit still." Based on Officer Gorman's observations, he believed that "[Hansen] appeared to be acting like someone under the influence of meth."

¶ 4 Officer Gorman proceeded to question Hansen, and when he asked whether there were drugs in her purse, she "immediately stood up off the bench and started walking towards the door." Grandmother "apparently recognized [Hansen] and yelled from inside the house, 'I don't want her anywhere around my house.'" Hansen was directed to sit back down, but she instead ran into the house and upstairs to one of the bedrooms. Officer Gorman followed and watched as Hansen "place[d] her purse underneath the bed, [and] then stood up and acted like everything was normal."

¶ 5 Meanwhile, Grandmother was yelling at Officer Gorman to get Hansen out of the house, so he told Hansen to get her purse and escorted her outside. Grandmother said that "she didn't want to pursue criminal charges against [Hansen]" but she "wanted [Hansen] out of her house." Once outside, Hansen admitted to using methamphetamine that day, at which point Officer Gorman "placed [Hansen] under arrest for Public Intoxication for being a danger to herself and others." A search incident to arrest uncovered drugs and drug paraphernalia in Hansen's purse.

¶ 6 The State filed an information charging Hansen with intoxication, possession of drug paraphernalia, and two counts of possession of a controlled substance (marijuana and methamphetamine). Hansen filed a motion to suppress the evidence found during the search incident to arrest, which the trial court denied. Hansen then entered a conditional guilty plea for possession of methamphetamine and the State dismissed the remaining charges. Hansen now appeals the trial court's denial of her motion to suppress evidence.

¶ 7 Hansen argues that the trial court erred by denying her motion to suppress

---

1. Because the material provisions of the statute have not changed, we cite to the current version of the Utah Code as a convenience to the reader.

2. Both parties stipulated to the facts set forth in Officer Gorman's police report, and no other evidence was presented at the hearing on Hansen's motion to suppress evidence.

because her arrest and the subsequent search incident to arrest were unlawful. Whether the trial court erred in denying Hansen's motion to suppress is a mixed question of law and fact. We review the trial court's conclusions of law nondeferentially for correctness, *see State v. Brake*, 2004 UT 95, ¶ 15, 103 P.3d 699, and its factual findings for clear error, *see State v. Krukowski*, 2004 UT 94, ¶ 11, 100 P.3d 1222. In addition, "issues regarding the constitutionality of arrest and searches present questions of law that [the appellate courts] review for correctness." *State v. Harker*, 2010 UT 56, ¶ 8, 240 P.3d 780.

■ ¶ 8 The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See* U.S. Const. amend. IV.[3] As a result, an officer must have probable cause to effectuate a warrantless arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."); *see also State v. Trane*, 2002 UT 97, ¶ 26, 57 P.3d 1052 (stating that under both the federal and state constitutions, "an officer must have probable cause before the officer can effect a warrantless arrest").

¶ 9 Hansen contends that Officer Gorman unlawfully arrested her because there was not probable cause to believe that she was committing any criminal offense. In response, the State contends that Officer Gorman had probable cause to believe that Hansen "had committed intoxication in a public place, intoxication in a private place, or criminal trespass." We agree with the State that Officer Gorman had probable cause to arrest Hansen.

■ ¶ 10 The United States Supreme Court has explained that " 'probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that

are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Further, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152, 125 S.Ct. 588 (citing *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003)).

¶ 11 Here, the facts and circumstances known to Officer Gorman at the time of Hansen's arrest demonstrate that he had probable cause to believe that Hansen was committing an offense, irrespective of whether he had probable cause to arrest her for the stated offense of public intoxication. Indeed, the trial court denied Hansen's motion to suppress on the basis that the arresting officer had probable cause to believe that Hansen was committing criminal trespass. Thus, to review the correctness of the trial court's decision, we evaluate whether the circumstances known to Officer Gorman at the time of Hansen's arrest would lead him to believe that by entering Grandmother's house, Hansen was committing criminal trespass.

■ ¶ 12 A person commits criminal trespass when, "knowing the person's entry or presence is unlawful, the person enters or remains on property as to which notice against entering is given by ... personal communication to the actor by the owner." Utah Code Ann. § 76–6–206(2)(b)(i) (Supp. 2010). Before Hansen's arrest, Hansen barged into Grandmother's house and ran upstairs after Grandmother yelled from inside the house, " 'I don't want her anywhere around my house.' " Then, while Hansen was trying to hide her purse underneath a bed, Grandmother yelled again for "[Hansen] to get out of her house." Given these facts, Officer Gorman was reasonable in concluding that Hansen unlawfully entered and remained on Grandmother's property after

---

**3.** The Fourth Amendment is applicable to the states by virtue of the Fourteenth Amendment. *See New Jersey v. T.L.O.*, 469 U.S. 325, 334–35, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

Grandmother gave notice to Hansen not to enter and to leave.[4]

¶ 13 Yet Hansen argues that because Grandmother also told the police officers that she did not want to press charges against Hansen, Grandmother "communicated her intent to revoke her trespassory interest in the property." As the trial court noted, even if Grandmother did not want to press charges for trespass, the officers were aware that trespass had occurred. Further, the State, not the victim, is responsible for prosecuting criminal acts. *See* Utah Code Ann. § 77–2–1 (2008) (stating that only a prosecuting attorney may file a criminal information, unless otherwise provided by law). As such, the victim's desire not to press charges is irrelevant to the analysis of whether the police officer had probable cause to believe a crime occurred or whether a crime in fact occurred. *See State v. Trane*, 2002 UT 97, ¶ 26, 57 P.3d 1052 (describing the probable cause analysis); *see also State v. Miner*, No. A06–649, 2006 WL 2406246, at *2 (Minn.Ct.App. Aug. 22, 2006) (explaining that the officers had probable cause to arrest the defendant and "[t]he fact that the complaining witness later declined to press charges . . . is irrelevant to the circumstances that existed at the time of the arrest"); *see generally* Utah Code Ann. § 77–7–2(1) (stating that a peace officer may make an arrest without a warrant if the officer has probable cause to believe that an offense has been committed in his or her presence). Thus, given Hansen's entry into Grandmother's house in spite of Grandmother's admonishment that she not enter and Hansen's decision to remain after being told to leave, Office Gorman had probable cause to believe a crime had occurred and Hansen's arrest was lawful.

¶ 14 Finally, because Hansen's arrest was lawful, the search incident to arrest was also lawful. *See Virginia v. Moore*, 553 U.S. 164, 177, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (stating that an arrest based on probable cause is reasonable under the Fourth Amendment and, thus, " 'a search incident to the arrest requires no additional justifica-

tion' " (quoting *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973))); *State v. Harker*, 2010 UT 56, ¶ 19, 240 P.3d 780 ("Because arrests based on probable cause are 'lawful' under the Fourth Amendment, the evidence obtained in a search incident to such an arrest is not excluded."). Therefore, the trial court did not err in denying Hansen's motion to suppress evidence found in a search incident to her arrest.

¶ 15 Affirmed.

¶ 16 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

---

4. For the first time on appeal, Hansen argues that Grandson may have been paying rent to Grandmother, thereby giving Grandson authority to permit Hansen to enter. Because this argument was not preserved, we do not consider it. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.