**2015 UT App 49**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
DENNIS GORDON ROSE,
Defendant and Appellant.

Memorandum Decision
No. 20121046-CA
Filed February 26, 2015

Fourth District Court, Nephi Department
The Honorable James M. Brady
No. 111600234

Edwin S. Wall, Attorney for Appellant

Sean D. Reyes and Marian Decker,
Attorneys for Appellee

JUDGE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES MICHELE M. CHRISTIANSEN and STEPHEN L. ROTH
concurred.

PEARCE, Judge:

¶1     Dennis Gordon Rose was convicted of driving under the
influence of alcohol and other related offenses. A sheriff's deputy
had stopped Rose after receiving a tip that a child was driving a
motorhome erratically on Old Highway 91 in Mona, Utah. The
district court denied Rose's motion to suppress evidence arising
from the traffic stop. Rose appeals, arguing that the deputy lacked
sufficient information to corroborate the tip at the time of the stop.
We disagree and affirm Rose's convictions.

¶2     While driving between Nephi and Mona, Utah, a motorist
(Informant) pulled behind an older white motorhome. The

motorhome weaved in and out of its lane and varied its speed between 15 and 40 miles per hour. When Informant had the chance to pass the motorhome, he observed a "little red-headed boy" behind the wheel. Once in front of the motorhome, Informant called a Juab County sheriff's deputy he knew from a previous interaction to tell him that something was amiss on Old Highway 91. Informant reported that a "kid" who was perhaps "eight to ten [years old]" was at the helm of an old motorhome and was "weaving around and going slow and fast."

¶3    The deputy, who was at home nearby at the time of the call, jumped into his patrol truck and drove within minutes to an intersection where he could observe Old Highway 91. Shortly after arriving, the deputy saw Informant drive past him; a thirty-foot white motorhome followed about three blocks behind. There were no other vehicles on the road. As the motorhome passed, the deputy observed that the driver was not a red-haired boy but rather an adult male with a goatee and a dark bandana on his head. Nevertheless, the deputy pulled the motorhome over. The deputy did not personally observe any traffic violations before he stopped the motorhome.

¶4    The traffic stop revealed Rose as the motorhome's driver. The deputy noted the smell of alcohol and observed that Rose was "flushed," his eyes were "glassy" and "bloodshot," and he was "shaking uncontrollably." The deputy also saw that Rose was traveling with his wife and children, one of whom was a boy with red hair.

¶5    The deputy administered field sobriety tests, which Rose failed. Rose also failed a portable breath test. Rose admitted that he had consumed a number of beers earlier that day and that he had permitted his son to sit on his lap and steer the motorhome. A computer check of Rose's license revealed that he was an alcohol-restricted driver required to have an interlock device on his vehicle. The deputy arrested Rose for, among other offenses, driving under the influence.

¶6    At a pretrial conference, Rose moved to suppress all evidence resulting from the traffic stop, arguing that the deputy lacked reasonable suspicion to initiate the stop of the motorhome. The district court denied the motion, and a jury later convicted Rose of driving under the influence and a seat belt violation. The court enhanced the DUI offense and, based upon a prior conditional guilty plea, convicted Rose of ignition interlock and alcohol-restricted-driver violations. Rose appeals from those convictions.

¶7    We review the denial of a motion to suppress as a mixed question of law and fact. *See State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. We review the district court's underlying factual findings for clear error and its legal conclusions for correctness. *See id.*

¶8    Rose primarily argues that the district court should have suppressed all evidence flowing from the traffic stop because the deputy lacked reasonable suspicion to detain him.[1] Specifically, Rose argues that the Informant's tip lacked sufficient detail to be considered reliable and that the deputy did not corroborate the information prior to the stop.

¶9    The Fourth Amendment's prohibition of "unreasonable searches and seizures" extends to temporary detentions, such as traffic stops. *See* U.S. Const. amend. IV; *Brendlin v. California*, 551 U.S. 249, 255 (2007). To survive constitutional scrutiny, a traffic stop must be (1) "lawful at its inception" and (2) "otherwise executed in a reasonable manner." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). To be lawful at its inception, the traffic stop must be supported by

---

1. Rose also argues that the district court erred in taking judicial notice that Mona, Utah, "is a smaller, rural community of about 1,500 people, which has view streets and does not usually have a high volume of large, white, motorhome traffic on its city streets." Because we conclude that the deputy had reasonable suspicion to stop Rose independent of these judicially noticed facts, we do not need to reach and resolve this question.

a reasonable suspicion that a person has been, is, or is about to be, engaged in criminal activity. *See State v. Roybal*, 2010 UT 34, ¶ 14, 232 P.3d 1016. The reasonable suspicion must be based upon "specific and articulable facts and rational inferences." *State v. Morris*, 2011 UT 40, ¶ 16, 259 P.3d 116 (citation and internal quotation marks omitted). In reviewing a suppression ruling, we do not look at the information the officer possessed at the time of the stop in isolation, but "look to the totality of the circumstances to determine whether, taken together, the facts warranted further investigation by the police officer." *State v. Alverez*, 2006 UT 61, ¶ 14, 147 P.3d 425 (citation and internal quotation marks omitted).

¶10    The reasonable suspicion standard does not require that the officer actually observe the violation. *Morris*, 2011 UT 40, ¶ 16. Reasonable suspicion may be based upon a tip. *Roybal*, 2010 UT 34, ¶¶ 14–20. An informant's tip creates reasonable suspicion if the information (1) is reliable, (2) provides sufficient detail of the criminal activity, and (3) is confirmed by the investigating officer. *State v. Prows*, 2007 UT App 409, ¶ 14, 178 P.3d 908. The tip upon which the deputy relied in this case met these requirements.

¶11    When an identified—i.e., non-anonymous—citizen informant provides a tip, we presume its reliability. *Roybal*, 2010 UT 34, ¶ 19; *accord State v. Purser*, 828 P.2d 515, 517 (Utah Ct. App. 1992) ("[R]eliability and veracity are generally assumed when the informant is a citizen who receives nothing from the police in exchange for the information."). Rose does not contest that Informant's tip should be given this presumptive reliability, but he does rely on *State v. Roybal*, 2010 UT 34, 232 P.3d 1016, to argue that Informant's personal acquaintance with the deputy should not *enhance* the presumptive reliability of the tip.

¶12    In *Roybal*, the Utah Supreme Court opined, "[W]e find it inappropriate to attach a presumption of either greater or lesser reliability to a tip from a personally involved informant." *Id.* ¶ 19. That case, however, examined an informant personally acquainted with the suspect and did not address the situation presented when

an informant is personally acquainted with the police officer. Because the ordinary presumption of reliability suffices to support reasonable suspicion in this case, we need not address the question of how an officer's personal acquaintance with an informant may affect the reliability analysis.

¶13    Rose's arguments primarily speak to the second two factors that allow a tip to support reasonable suspicion. He argues that the tip, even with the presumption of reliability, was insufficient to give rise to reasonable suspicion because it lacked sufficient detail of the criminal activity and because the information the deputy had at the time he stopped Rose did not adequately confirm the tip. Rose contends that Informant did not provide the deputy with the "make, model, license plate or any other unique physical character-istics of the motorhome." Rose also maintains that because the deputy did not personally observe any traffic violations and because the deputy saw a grown man with a bandana covering his hair, not a "little red-headed boy," behind the wheel of the motorhome, the deputy failed to corroborate the criminal activity. In other words, Rose argues that the tip may have provided the deputy with reasonable suspicion that *some* motorhome had been engaged in criminal activity, but the deputy lacked reasonable suspicion to believe that the motorhome he pulled over was that motorhome.

¶14    Rose's arguments disregard the totality of the information the deputy possessed at the time he stopped the motorhome. The deputy arrived at the intersection with Old Highway 91 mere minutes after he received Informant's call. While at the intersection, he saw Informant's vehicle pass by, followed immediately by a motorhome. The deputy observed no other traffic on the highway. On the totality of these facts, it was reasonable for the deputy to conclude that the motorhome following Informant was the same vehicle Informant had described minutes earlier.

¶15    We reached a similar conclusion in *State v. Prows*, 2007 UT App 409, 178 P.3d 908. In *Prows*, a citizen called 911 at 2:30 a.m. to

report a suspected burglary. He told the dispatcher that the suspects had climbed into "a Jeep or a truck" and were traveling south out of a subdivision. *Id.* ¶ 16. We concluded that this tip was sufficiently descriptive to support a police stop of the defendant's vehicle, given the lack of traffic on the road at the time. *Id.* ¶¶ 2, 17. We also concluded that the officer had sufficiently corroborated the tip because "almost contemporaneously, [one officer] spotted a vehicle traveling south and called [another officer] and told him to travel in the direction of the vehicle and intercept it." *Id.* ¶ 18. We decided that based "on these factors, i.e., the description of the vehicle, the direction it was traveling, the time and location, and the fact that there were no other cars in the area, the third factor regarding corroboration [was] satisfied." *Id.* Similarly, here, where the deputy observed Informant followed closely by a motorhome and saw no other motorhomes on the road,[2] the deputy possessed reasonable suspicion to make the stop.

¶16     Examining the totality of the information the deputy possessed at the time of the stop, we conclude that he had reasonable suspicion to stop Rose's motorhome and that the district court did not err in denying Rose's motion to suppress. We affirm.

--------

2. As noted earlier, Rose also challenges the district court's finding, based on judicial notice, that there are generally few motorhomes on Old Highway 91 in Mona, Utah. We do not need to analyze Rose's judicial notice argument because the deputy testified that there were no other motorhomes on the road at the time of the stop. The fact that Rose's motorhome was the only such vehicle visible to the deputy at the time of the stop creates the reasonable inference that Rose's was the motorhome that Informant had reported, without the need to consider the normal traffic patterns in Mona or the city's size or configuration. The district court's decision to take judicial notice, even if erroneous, does not change that calculus.