**2016 UT App 215**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MATTHEW JAMES HINMON,
Appellant.

Memorandum Decision
No. 20150015-CA
Filed October 27, 2016

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 131401457

John B. Plimpton, Heather J. Chesnut, and Alexandra
S. McCallum, Attorneys for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE
PAMELA T. GREENWOOD concurred.[1]

TOOMEY, Judge:

¶1     In this memorandum decision, we determine whether the
trial court erred in denying Matthew James Hinmon's motion to
suppress evidence. We affirm.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

BACKGROUND

¶2     In September 2013, a grocery store employee (Employee) noticed a small green passenger car backed into a parking stall in the store parking lot. The car, which was next to Employee's own vehicle, caught his attention because the passenger side door was welded shut and because it was parked on the west side of the parking lot, "where most employees park." Two people were sitting in the car. As Employee approached his own car, a man seated in the passenger seat saw him, "lurched forward" to cover something in his lap, and looked over at Employee "in a manner that struck [Employee] as suspicious." Looking through the window on the driver's side of the vehicle, Employee saw a towel on the man's lap "with a bunch of pink balloons" on top of the towel.

¶3     The number of balloons seemed too many "for just personal use," and Employee suspected a drug transaction. He radioed the store manager and the security guard (Guard) to "come out and handle" the situation. Guard worked part time at the grocery store and was a full-time peace officer with the Utah Division of Wildlife Resources. He had worked with the Division for twenty-five years. At the time of the incident, he was wearing a gun belt, a gold name badge, and a dark blue uniform, which "looks like" "a police officer's uniform." Employee met the manager and Guard as they emerged from the store, and explained the situation to them. Employee described the car as a "little small green vehicle," told them where it was parked, and that it had been backed into the stall. He also described the passenger's "suspicious" reaction, and said the passenger had a towel across his lap and was "twisting up" little pink balloons. He disclosed his suspicions that the passenger was involved in a drug transaction, and more specifically, that he assumed the passenger was selling heroin to the driver.

¶4     Guard decided to investigate, and he and the manager moved toward the car Employee had described. Guard approached it from behind and peered into the window on the

passenger's side without being noticed by either occupant. As Guard looked over the passenger's shoulder, he saw a towel on the man's lap and observed him manipulating something "on the towel in the middle of his lap."

¶5 The next events happened in rapid succession. As Guard moved closer, the passenger looked up at him and froze. Guard called out, "Don't move." The passenger briefly hesitated, then grabbed what was in his lap and "thr[ew] his hands toward the floor of the vehicle." He yelled at the driver to "take off, take off" and to "just drive, just drive" and reached toward the car's gearshift. When Guard saw the passenger's hands shove something towards the floor, he thought the passenger was either "hiding contraband" or "going for a weapon." Guard reached inside the open passenger window to grab the passenger's hands and restrain him, saying, "Police, you are under arrest."

¶6 A struggle ensued. Guard continued trying to restrain the passenger's hands and told him repeatedly to "quit resisting" and to "stop resisting arrest." The passenger freed his right hand and reached toward the driver with a clenched fist, telling her to "eat this," but she shook her head. In an attempt to free himself from Guard's grip, the passenger "lurched really hard up over the seat" so that his head was in the backseat and his feet were in the passenger seat. He tried to "shov[e] something in his mouth," but "a little pink balloon bounce[d] off and roll[ed] into the backseat." While Guard struggled to restrain the passenger, the manager was on the driver's side of the car. The manager saw the balloon when it fell and immediately picked it up from the backseat. Eventually, the manager and Guard restrained and arrested the passenger, who was later identified as Hinmon. A police officer soon arrived and field tested the contents of the pink balloon, which tested positive for heroin.

¶7 Hinmon was charged with possession of a controlled substance and interfering with an arresting officer. He moved to suppress the evidence of the pink balloon and the results of the

field test as the fruit of an unconstitutional search. The trial court held an evidentiary hearing at which Employee, the manager, and Guard each testified. After hearing oral argument and reviewing hearing transcripts, witness statements, and memoranda from both sides, the court entered detailed findings of fact and conclusions of law.

¶8 The court determined that Guard had initiated an investigatory stop when he told Hinmon, "Don't move." It also concluded that Guard had reasonable suspicion to make the stop: Employee's tip was from a citizen informant and "highly reliable," "sufficiently detailed," and confirmed by Guard. Next, the court determined that Guard arrested Hinmon when he attempted to restrain Hinmon's hands.[2] The court also concluded Guard had probable cause for this arrest because after Guard told Hinmon not to move, Hinmon reacted by shoving everything in his lap to the floor, reaching for the gearshift, and yelling at the driver to "take off." This reaction, combined with Employee's tip and Guard's investigation, was enough to show an objectively reasonable high probability of criminal activity." Accordingly, the court denied Hinmon's motion to suppress, and Hinmon entered a *Sery* plea reserving the right to appeal the trial court's ruling.[3]

---

2. The trial court determined that Guard was acting under the color of law when he detained and arrested Hinmon. This is not disputed on appeal. Hinmon also does not contend that Guard lacked the authority to detain or arrest him.

3. A *Sery* plea allows a defendant to enter a conditional guilty plea while reserving the right to appeal a court's decision on a motion. *See, e.g.*, *State v. Rivera*, 943 P.2d 1344, 1344–45 (Utah 1997).

ISSUES AND STANDARDS OF REVIEW

¶9     Hinmon contends the trial court erred when it denied his motion to suppress. A trial court's decision to grant or deny a motion to suppress presents a "mixed question of law and fact." *State v. Fuller*, 2014 UT 29, ¶ 17, 332 P.3d 937. The court's factual findings are reviewed for clear error, while its legal conclusions are reviewed for correctness. *Id.* Hinmon further alleges the court made four clearly erroneous findings of fact. We will set aside the trial court's factual findings as clearly erroneous only if they are "against the clear weight of the evidence, or if [we] otherwise reach[] a definite and firm conviction that a mistake has been made." *Brown v. State*, 2013 UT 42, ¶ 37, 308 P.3d 486 (alterations in original) (citation and internal quotation marks omitted).

ANALYSIS

¶10    The United States Constitution protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. Our case law outlines three different types of permissible law enforcement encounters: consensual encounters, investigatory stops, and arrests. *See State v. Applegate*, 2008 UT 63, ¶¶ 8–9, 194 P.3d 925. Only the latter two types are at issue here. For an investigatory stop, an officer must have reasonable, articulable suspicion that criminal activity has taken place. *State v. Worwood*, 2007 UT 47, ¶ 23, 164 P.3d 397. To effect a reasonable, warrantless arrest, an officer must have probable cause to believe that a crime has been committed. *State v. Hansen*, 2011 UT App 242, ¶ 8, 262 P.3d 448 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)). "[E]vidence obtained in unreasonable searches and seizures in violation of the Fourth Amendment is excluded from criminal proceedings." *State v. Harker*, 2010 UT 56, ¶ 17, 240 P.3d 780.

¶11    Hinmon contends that the trial court erred in concluding Guard had reasonable suspicion to initially detain Hinmon, and

that the court erred in concluding Guard had probable cause to arrest him. Hinmon also alleges that the court clearly erred in making four particular findings of fact. We address Hinmon's challenges to these findings of fact within our discussion of the ultimate issues of reasonable suspicion and probable cause.

## I. Reasonable Suspicion

¶12    First, Hinmon claims Guard "lacked reasonable suspicion when he performed an investigatory detention of [him]."[4] Reasonable suspicion requires that officers "be able to point to specific facts which, considered with rational inferences from those facts, reasonably warrant" the detention. *State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590. Reasonable suspicion "is dependent upon both the content of information possessed by police and its degree of reliability." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "Both factors—quantity and quality—are considered in the totality of the circumstances." *White*, 496 U.S. at 330 (citation and internal quotation marks omitted).

¶13    Here, Guard relied on a tip provided by an identified citizen informant—Employee. Reasonable suspicion may be based on an informant's tip. *See State v. Roybal*, 2010 UT 34, ¶¶ 14–15, 20, 232 P.3d 1016. The Utah "Supreme Court has declined to adopt a 'rigidly exact[ing]' standard in assessing an informant's tip and instead undertakes a 'flexible, common sense

---

4. Hinmon contends the trial court clearly erred when found that Guard did not identify himself as the police when he said, "Don't move." There is conflicting testimony in the record on this point, but neither party disputes that Guard's words initiated an investigatory stop. Because this fact has no bearing on whether Guard had reasonable suspicion at the time he detained Hinmon, we need not decide whether the finding is clearly erroneous.

test' with a view toward the 'totality of the facts and circumstances.'"[5] *State v. Lloyd*, 2011 UT App 323, ¶ 15, 263 P.3d 557 (alteration in original) (quoting *State v. Saddler*, 2004 UT 105, ¶¶ 10–27, 104 P.3d 1265). When determining whether a tip was sufficiently reliable to support a conclusion that reasonable suspicion existed, we look to the "'indicia of veracity, reliability, and basis of knowledge'" as "'non-exclusive elements.'" *Id.* (quoting *Saddler*, 2004 UT 105, ¶ 11). Officer corroboration of the tip may also be considered. *See State v. Keener*, 2008 UT App 288,

5. Hinmon relies on a case from this court that uses a three-factor test to determine whether reasonable suspicion may be based on a citizen informant's tip. *State v. Rose*, 2015 UT App 49, ¶ 10, 345 P.3d 757 (A citizen informant's tip "creates reasonable suspicion if the information (1) is reliable, (2) provides sufficient detail of the criminal activity, and (3) is confirmed by the investigating officer."); *see also State v. Street*, 2011 UT App 111, ¶ 7, 251 P.3d 862 (applying the same test). But in light of the Utah Supreme Court's decision *State v. Saddler*, 2004 UT 105, 104 P.3d 1265, rigid application of these three factors is not mandated. *Id.* ¶¶ 9–10. *Saddler* determined that this court had "developed th[e] three-factor analysis in the absence of any direction" from the Utah Supreme Court and that "such an exacting analysis is ill-suited to conducting a commonsense probable cause determination . . . ." *Id.* ¶ 10. While these factors may be useful in determining whether a tip creates reasonable suspicion, they are not mandatory—not all three factors are required to find reasonable suspicion, and they are not the only relevant factors that may be considered in the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230–31, (1983); *Saddler*, 2004 UT 105, ¶ 11; *see also State v. Roybal*, 2010 UT 34, ¶ 20, 232 P.3d 1016 (discerning reasonable suspicion based solely on a citizen informant's report, without officer corroboration). Although these three factors are relevant to our inquiry here, *Saddler* requires we apply a totality of the circumstances analysis instead of the three-part test.

¶ 12 n.4, 191 P.3d 835 (explaining that officer corroboration may be used to establish probable cause).

¶14 Information from identified citizen informants "is generally considered highly reliable," *Roybal*, 2010 UT 34, ¶ 16 (citation and internal quotation marks omitted), and "needs no independent proof of reliability or veracity," *State v. Comer*, 2002 UT App 219, ¶ 22, 51 P.3d 55 (citation and internal quotation marks omitted). Reliability can also be assumed when a citizen "receives nothing from the police in exchange for the information." *See State v. Purser*, 828 P.2d 515, 517 (Utah Ct. App. 1992).

¶15 Hinmon argues Employee's tip was unreliable because "there was no evidence that he 'had a sufficient basis of knowledge for concluding that the occupants of the car' were engaged in drug activity." (Quoting *Lloyd*, 2011 UT App 323, ¶ 17.) In *State v. Lloyd*, a caller identified only by her first name told the police that people were "smoking drugs" in a car outside her apartment building. 2011 UT App 323, ¶ 2. Although the caller told the police she could see and smell that the individuals were smoking drugs, there was not enough information to determine whether she had a sufficient basis of knowledge to support that conclusion. *Id.* ¶ 17. This court therefore concluded the informant's tip alone was not enough to justify reasonable suspicion. *Id.*

¶16 The facts in this case differ from those in *Lloyd*. Employee was an identified citizen informant, as he had worked at the grocery store for seven years and Guard had known him for a number of those years. Employee was not compensated or given any other incentive for his report. Thus, his report is given "presumptive reliability." *State v. Rose*, 2015 UT App 49, ¶ 11, 345 P.3d 757. Furthermore, Employee supplied Guard with detailed information about what was happening. This allowed Guard to determine from his own experience, based on the facts given, whether a crime was taking place, instead of relying on Employee's experience or basis of knowledge for that

conclusion.[6] *See Warren*, 2003 UT 36, ¶ 14 (explaining that due weight must be given to specific reasonable inferences drawn from an officer's experience, which allows officers to make determinations based on facts that may elude an untrained person).

¶17 Employee provided a reliable, detailed tip. The tip described the car, its location, and its position. The tip also described in detail the activity of the car's occupants, including that Hinmon had been manipulating pink balloons on a towel in his lap and that he had "lurched forward" to hide what he was doing when Employee walked by. Guard's investigation corroborated Employee's report. Although Guard did not see any balloons before he detained Hinmon, he found the car exactly as Employee had described it: a small, green vehicle, parked on the west side of the grocery store, and backed into the parking stall.[7] Hinmon also matched Employee's description—

---

6. Hinmon claims the trial court erred when it found that Employee told Guard he believed the balloons contained drugs and thought a drug transaction was occurring "based upon his experience." Hinmon contends that although Employee gave his opinion on the nature of the activity, he never mentioned having any experience with drugs to Guard. But because Employee gave sufficient detail about the activity, Guard could have relied on his own experience to reach similar conclusions. *See State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590. Therefore, even if Employee did not mention his experience to Guard, Guard still had enough information to reasonably suspect criminal activity.

7. Hinmon also alleges the trial court erred by finding that Employee told Guard "he believed the [car] was backed into the stall *for a quick get-away*." (Emphasis added.) Because there is reasonable suspicion without factoring in this particular finding, we need not determine whether the court clearly erred in making it.

he was seated in the passenger seat, manipulating something on a towel in his lap. Guard had twenty-five years of experience as a peace officer, during which time he gained extensive patrol, citation, and arrest experience. Considering the totality of the circumstances—including the information that Guard was given and his personal observations—it was reasonable for Guard to suspect criminal activity was taking place. *See State v. Worwood*, 2007 UT 47, ¶ 23, 164 P.3d 397. The trial court was thus correct in determining that reasonable suspicion justified the detention.

## II. Probable Cause

¶18    Next, Hinmon claims Guard lacked probable cause to make the arrest. Probable cause justifying arrest requires that the facts and circumstances within the arresting officer's knowledge be sufficient to warrant a prudent person in believing that a crime has been committed. *State v. Hansen*, 2011 UT App 242, ¶ 10, 262 P.3d 448 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The inquiry is a "practical, common-sense decision whether, given all the circumstances . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time . . . ." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "We must examine the 'totality of the circumstances' to determine whether the informant['s] tip[], together with police observations, provided probable cause to arrest [the defendant]." *State v. Anderson*, 910 P.2d 1229, 1233 (Utah 1996) (quoting *Gates*, 462 U.S. at 238).

¶19    Between the time Guard detained Hinmon by ordering him not to move and arrested him by attempting to restrain his hands, the trial court found that Hinmon shoved what was on his lap to the floor, told the driver to "take off" and "just drive," and reached toward the gearshift. Our inquiry is whether these actions, in combination with the information Guard already had,

are enough to give Guard probable cause to believe that criminal activity was taking place.

¶20    Hinmon contends the trial court clearly erred when it made these particular findings of fact. He does not dispute that these three things occurred, but disputes the court's finding of the order in which they occurred. Specifically, Hinmon asserts that he did not tell the driver to "take off" and "just drive" or reach for the gearshift until *after* Guard had attempted to restrain him. Hinmon also claims the trial court's other findings were inconsistent with this particular order of events—finding that Hinmon said "start the car" and "go, go" while he and Guard were already struggling, and finding that Guard reached for Hinmon's hands "[a]s soon as [Hinmon] lunged to the floor" and "push[ed] everything off of his lap."

¶21    We defer to a trial court's findings of fact unless they are clearly erroneous. *State v. Green*, 2005 UT 9, ¶ 25, 108 P.3d 710. "For a reviewing court to find clear error, it must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *Id.* (citation and internal quotation marks omitted). This is a "highly deferential" standard because the trial court is "considered to be in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole, something an appellate court cannot hope to garner from a cold record." *Id.* (citation and internal quotation marks omitted).

¶22    In reviewing the record on the precise order of events, there are inconsistencies among the testimonies and in the factual findings. But according to the manager's testimony, after Guard ordered Hinmon not to move, Hinmon "moved forward, shoved everything that was in his lap to the ground and started yelling to the driver to take off, take off." When the prosecutor asked him what happened next, the manager testified that Hinmon "started screaming, [t]ake off, take off, and it looked like he was reaching for the gearshift." The record thus

adequately supports the trial court's finding as to the order of events. The court therefore did not clearly err, and any inconsistencies can be resolved in a light most favorable to this determination. *See id.*

¶23 The State argues that Hinmon's attempt to conceal the evidence and flee, in conjunction with Employee's tip and Guard's own observations, gave rise to probable cause. It asserts that furtive movements, when coupled with other facts, can support probable cause. The United States Supreme Court has stated that

> deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.

*Sibron v. New York*, 392 U.S. 40, 66–67 (1968).

¶24 Hinmon disagrees with the State and cites four cases, claiming that the furtive movements of the defendants were not enough to justify an arrest or a search. *See State v. Schlosser*, 774 P.2d 1132, 1138 (Utah 1989) (holding that defendant's "turning to the left and to the right, appearing fidgety, bending forward, and turning to look at the officer" were not enough to "show a reasonable probability that criminal conduct had occurred"); *State v. Parke*, 2009 UT App 50, ¶¶ 3, 10–11, 18, 205 P.3d 104 (holding that defendant's shoulder movement, which appeared to show him reaching for his waistband, was not enough to support a reasonable suspicion that he was armed); *State v. Martinez*, 2008 UT App 90, ¶ 2 n.3, 182 P.3d 385 (stating that behavior like moving arms and bending forward as if putting something on the floorboard does not alone establish reasonable suspicion); *State v. Holmes*, 774 P.2d 506, 511–12 (Utah Ct. App.

1989) (holding that a defendant's "attempt to stuff [a] roll of paper towels down between the car seat and the console," standing alone, was not enough to establish probable cause).

¶25   These cases are distinguishable. *Schlosser*, *Parke*, and *Holmes* all involved traffic stops, where the defendant's furtive movements or acts of concealment alone were not sufficient to give reasonable suspicion or probable cause of a separate crime. In this case, Guard already had reasonable suspicion that Hinmon was involved in drug activity. From Employee's report and his own observations, Guard had a reasonable suspicion that Hinmon was in possession of contraband. Hinmon's reaction to Guard's commands—trying to conceal what was on his lap, and trying to flee from Guard's presence—was enough to support a reasonable probability that Hinmon was involved in criminal activity, when considered with the information that Guard already had. In *Martinez*, while the defendant made furtive movements, the combination of the information the officer received from a dispatch report and his own observations was enough to give the officer reasonable suspicion of criminal activity. 2008 UT App 90, ¶¶ 8, 9. None of these cases undermines our conclusion that furtive movements, acts of concealment, and attempts to flee, in conjunction with other information that criminal activity is taking place, can support a finding that probable cause exists. *See Sibron*, 392 U.S. at 66–67.

¶26   In sum, when Guard detained Hinmon, he had reasonable suspicion that Hinmon was involved in drug activity. As soon as Guard detained him by telling him not to move, Hinmon's reaction—shoving what was in his lap to the floor, reaching for the gearshift, and yelling at the driver to take off—showed that Hinmon was attempting to conceal evidence and flee. This provided a "fair probability" of a crime—enough that a prudent person would believe a crime was being committed. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983); *State v. Hansen*, 2011 UT App 242, ¶ 10, 262 P.3d 448. Thus the trial court did not err in determining that Guard had probable cause to arrest Hinmon.

CONCLUSION

¶27 To the extent that we rely on the trial court's contested findings of fact, we conclude the court's findings were not clearly erroneous. We further conclude that Guard had reasonable suspicion to detain Hinmon and probable cause to arrest him.

¶28 Affirmed.

———